**Linda CHASSON, Appellant (Plaintiff),**

v.

**COMMUNITY ACTION OF LARAMIE COUNTY, INC., a Wyoming corporation, and Linda Burt, Appellees (Defendants).**

**No. 88–242.**

Supreme Court of Wyoming.

Jan. 31, 1989.

---

goings on involving California will execution and probate proceedings.

Kathryn A. Jenkins of Kline & Buck, Cheyenne, for appellant.

Rodger McDaniel of Southeast Wyoming Law Offices, Cheyenne, for appellees.

Before CARDINE, C.J., MACY and GOLDEN, JJ., and RAPER and ROONEY, Ret. JJ.

RAPER, Justice, Retired.

This is an employment termination case in which appellant alleged a contract of employment and related rights under federal regulations, deprivation of constitutional rights and interference with a contract. A motion to dismiss the complaint on the ground that it failed to state a cause of action under 42 U.S.C. § 1983 (1982) was sustained by the district court; the district court dismissed from the action two of appellee Community Action of Laramie County's (CALC) directors (Wisroth and Baldwin). An amended complaint was filed to which the appellees filed a motion for summary judgment alleging that appellant failed to state a cause of action for violation of her civil rights, failed to exhaust her administrative remedies and had no contractual rights under federal regulations. After consideration of properly filed materials, the district court sustained the motion.

We will affirm the district court.

Appellant sets out the issues as:

A. Is the question of whether Linda Chasson was terminated for cause one of fact for a jury precluding summary judgment?

B. Is Linda Chasson entitled to bring this action in a court of law although she did not request a hearing before the board of directors of CALC?

C. Do the federal rules and regulations governing Head Start programs

create a contract between Linda Chasson and CALC?

D. Does Linda Chasson have a cause of action against Linda Burt, Sharon Wisroth and Jerry Baldwin in their individual capacities for intentional interference with contract or prospective economic advantage.

E. Is the State's involvement with CALC sufficient to create a question of fact as to whether CALC acted under color of state law pursuant to 42 U.S.C. Section 1983.

Appellees see the issues to be:

A. Can the affidavit of Appellant's attorney filed prior to the summary judgment hearing be considered in opposition to Appellees' motion for summary judgment?

B. Can affidavits filed on behalf of Appellant after the summary judgment hearing be considered in opposition to Appellees' motion for summary judgment?

C. Did the Defendants act under color of state law for purposes of stating a cause of action under Title 42 U.S.C. § 1983 within the facts of this case?

D. Are Appellant's claims barred for the reason that she failed to exhaust available administrative remedies?

E. Do federal regulations regarding parent participation in Head Start programs create contractual employment rights for the Appellant?

F. Can a party to a contract be held liable under a theory of intentional interference with contractual rights.

CALC is a private, non-profit corporation chartered under Wyoming law, which administers several federal programs. Overall direction of the corporation is vested in the Board of Directors of such corporation. The Head Start program was established by Congress to provide "comprehensive health, educational, nutritional, social, and other services to economically disadvantaged children and their families." 42 U.S.C. § 9831(a) (1982). The United States Department of Health and Social Services is employed to grant appropriated funds to various agencies to administer the program

locally. 42 U.S.C. § 9833 (1982). CALC has been the local agency grantee for Laramie County, Wyoming for over nineteen years. In the year that this case arose, CALC administered a grant of $220,000 for Head Start. Appellant was employed by CALC as Director of the Head Start program.

Appellant was reprimanded in writing by the Board of Directors through the Director of CALC programs for failure to submit a timely budget, failure to properly complete a program evaluation, failure to involve the Policy Council in the budget process, staff conflicts and failure to assist in resolution of misunderstandings between CALC and the Policy Council.

Afterwards, appellant was required to appear at a CALC board meeting to answer questions which were sent to her in a letter and directed to appear at an emergency meeting to discuss the problems. Appellant refused to meet because of "personal commitments that need my attendance." She instead sent her husband to the meeting to present a letter which did not appropriately respond to the Board's concerns.

Following that incident, appellant was placed on probation for ninety days. Her performance did not improve. She had repeated unexcused and unexplained absences from work, failed to perform work in a timely manner, had continued budget overexpenditures (the second in a two-year period), and allowed a person not properly licensed to drive the Head Start school bus with children on board, which would have invalidated liability insurance coverage if an accident had occurred.

After what appeared to be an unsuccessful probation, the Board requested appellant to resign; she refused. The Board then wrote a letter to the Policy Council requesting its consideration of appellant's discharge, which the Policy Council refused to consider and took no action on.

Finally, the Board felt obligated to terminate appellant in view of the Board's fiscal responsibility and to protect the integrity of the Head Start program. Appellant was terminated on May 17, 1985.

More facts will be set out as we move through the issues we consider as dispositive of the appeal.

## I

■ Appellant places stress on the fact that she considers this a breach of contract case. While CALC had entered into no written contract with appellant, we recognize that a right to continued employment can be created by statute, rules and regulations enacted pursuant to statute, or by rules and regulations having the force of a contract. *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985); *Carlson v. Bratton,* 681 P.2d 1333 (Wyo.1984).[1]

Appellant places primary, if not sole reliance on what is referred to throughout the record as "I–30," an appendix to regulations pertaining to the Head Start program which is a part of 45 C.F.R. § 1304 (1986). Chart C graphically sets out the respective responsibilities of the Board of the Grantee Agency (appellee) and the Head Start Policy Council.[2] In order to hire or fire the Head Start Director, general responsibility rests with the Board. The Board, Executive Director and the Policy Council must approve or disapprove before the action is taken and must have been consulted in the decision-making process. If the Council does not approve, the proposal cannot be adopted nor action taken until agreement is reached between the disagreeing groups, according to "I–30."

If this regulation is read without reference to the genuine facts and circumstances disclosed in the record, then it would seem that reversal of the district court would be inevitable as far as the motion for summary judgment was concerned. An examination of such facts and circumstances indicates that there is reason to affirm. The rule of reason must prevail. We cannot blindly accept the application of a rule without examining all the surrounding circumstances. The fallacy in appellant's position is her refusal to look beyond the rule, a position obviously adopted by the Policy Council.

There is no argument by appellant that the Policy Council, after the Board had made repeated unsuccessful attempts to involve the Council in the disciplining of the Director of Head Start chose not to become involved. The minutes of the Policy Council disclose agreement by the Policy Council to that effect. This impasse became irreconcilable. When it became obvious that the Policy Council would not participate, in desperation, the Board decided to, and for cause which we shall later discuss, discharge appellant.

In a proceeding in the United States District Court for the District of Wyoming wherein CALC appealed the final decision of the Commissioners of the Administration of Children, Youth and Families terminating the Head Start program administered by CALC, some of the same questions we have before us were at issue. Order Denying Motion to Dismiss or for Summary Judgment, No. C86–0243–B, United States District Court for the District of Wyoming, dated and filed September 12, 1986. "Two issues are raised by the final decision," declared the United States Chief District Judge. "The first is whether CALC discharged the Head Start director in violation of the Head Start Act and its implementing regulations. The second is whether such a violation warrants termination of CALC's grant." We do not have the second issue before us, except in a peripheral way.

Here, as in the federal case, that CALC violated the federal regulations is undisputed but as pointed out by the federal judge, "The decision overlooks a significant aspect of the statutory scheme." He went on to say:

1. Wyoming follows the rule that either party may terminate an employment "at will" contract for any reason or without reason and is not violative of any implied covenant of good faith or fair dealing. *Mobil Coal Producing, Inc.,* 704 P.2d at 704.

2. The Policy Council is a formal structure by which parents participate in policy making and operation of the Head Start program. It is made up of fifty percent parents of Head Start children enrolled in that grantee's program plus representatives of the community. B1–Introduction to I–30 Concerning Role of the Parents.

The Commissioner correctly acknowledged Congress' concern that Head Start parents be intimately involved in the administration of Head Start Programs. *See* H.R.Rep. No. 93–1043, 93rd Cong., 2d Sess. (1974), *reprinted in,* 1974 U.S. Code Cong. & Ad.News 8048. The Court recognizes the importance of parental involvement in achieving the goals of the Head Start program. Congress, however, also wanted Head Start programs to be "free of taint." 42 U.S.C. § 9839(a).[3] *See also* 42 U.S.C. § 9836(a); H.R.Rep. No. 93–1043, *supra, reprinted in* 1974 U.S.Code Cong. & Ad. News 8084–85. Here, the Commissioner failed to consider the overexpenditures caused by the Head Start director.

An inherent tension exists between parental involvement in program decision making and the Head Start grantee's legal responsibility to administer the program in a fiscally responsible manner. Careful balancing is required lest this tension become a contradiction. Congress did not intend that one factor outweigh the other. Each must receive consideration, especially in a decision of the Commissioner terminating financial assistance to a Head Start grantee. Given the record of fiscal problems experienced by CALC and the Head Start program, penalizing the Board for attempting to manage the program responsibly is unreasonable. Further, the record indicates that the PC itself dealt with CALC in bad faith. The PC sought to supplant CALC as the grantee and possibly acted to undermine CALC's administration of Head Start. In these circumstances, the Commissioner's unyielding adherence to an otherwise beneficial regulation is unreasonable and leads to an absurd outcome.

■ We are in accord with the United States Chief District Judge. His opinion is in accord with Wyoming law. The reasoning used in interpretation of statutes is applicable to rules made pursuant to statute. *International Ass'n of Firefighters, Local No. 279 v. Civil Service Commission of Fire Department of City of Cheyenne,* 702 P.2d 1294 (Wyo.1985). Statutes are not to be given a construction to produce absurd results, *State v. Sodergren,* 686 P.2d 521 (Wyo.1984), nor are rules.

The Board repeatedly appealed to the Policy Council to participate in conferences with the Board to consider the discharge of appellant before the Board finally, in desperation, took such action. The Board's communications, both written and oral, were ignored until the Board's termination of appellant was actually taken. This was not a case of a hasty decision by the Board but was a decision that took some seven months to evolve. The Board took progressive action with appellant in an effort to urge adequate performance of her duties: reprimand, probation, request for resignation and, ultimately, discharge. The Board acted reasonably, keeping in mind its responsibility for government funds and the integrity of the Head Start program.

Under all the undisputed circumstances, we consider the action of the Board to have been reasonable and the inaction of the Policy Council as unreasonable. It is apparent that appellant exercised considerable influence with the Council and was antagonistic toward the Board. Her conduct somewhat mimicked that of the Council. She ignored pertinent questions directed to her by the Board with respect to the details of the Head Start program, the operation of which was her responsibility. She overexpended funds within her budget which the federal agency refused to approve and left the Board responsible for

---

**3.** 42 U.S.C. § 9839 (1982) reads in pertinent part:

Each Head Start agency shall observe standards of organization, management, and administration which will assure, so far as reasonably possible, that all program activities are conducted in a manner consistent with the purposes of this subchapter and the objective of providing assistance effectively, effi-

ciently, and free of any taint of partisan political bias or personal or family favoritism. * * * Each such agency shall adopt for itself and other agencies using funds or exercising authority for which it is responsible, rules designed to * * * (2) assure that only persons capable of discharging their duties with competence and integrity are employed * * *.

raising funds through private contributions, bake sales, rummage sales and the like. Past experience indicated that the most that could be expected in such activities was around $1,000. The deficit of over $3,000 was caused by appellant overexpending some $4,000, which was not the first time she had done so; she had overexpended the year previous, but in a smaller amount. This inept conduct is cause, though this employment had probably collapsed under the weight of the surrounding circumstances to an at will contract by the misconduct of the Policy Council and no cause was necessary, a view we prefer. *Alexander v. Phillips Oil Co.*, 707 P.2d 1385 (Wyo.1985).

We also consider it serious that appellant was late in submitting the Head Start budget to the Board. The Policy Council refused to permit a budget item of over $1,000 for staff operation of CALC which required a figure closer to an allowance of $16,000 to $17,000 under applicable statute and regulation. This was part of the Policy Council's bad faith effort to oust CALC as the administering agency of Head Start and itself wrest control as the grantee agency. As such, this added to the turmoil and reinforced the absurdity of the situation. We understand the testimony of the chairman of the CALC Board when he declared that the Board was "held hostage by the Policy Council." Such immobility could never have been anticipated by Congress when it expressed a desire for parent participation in Head Start programs.

## II

42 U.S.C. § 1983 (1982) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Appellant asserts that she was deprived of her constitutional rights and that such deprivation took place under color of Wyoming state law. She cites *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) which lays out the following test:

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. * * * Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Lugar,* 102 S.Ct. at 2753–54.

However, in *Lugar,* as pointed out by appellees' counsel, it was said:

Petitioner presented three counts in his complaint. Count three was a pendent claim based on state tort law; counts one and two claimed violations of the Due Process Clause. Count two alleged that the deprivation of property resulted from respondents' "malicious, wanton, willful, opressive [sic], [and] unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, *respondents were acting contrary to the relevant policy articulated by the State. Nor did they have the authority of state officials to put the weight of the State behind their private decision,* i.e., this case does not fall within the abuse of authority doctrine recognized in *Monroe vs. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision.* Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.

Id. 102 S.Ct. at 2755 (emphasis added).

By no stretch of the imagination can it be found that appellees, or any of them,

were acting "under color of state law." CALC is a private, non-profit corporation, incorporated under the laws of the State of Wyoming. No person acting for the State of Wyoming has any control of CALC for the State of Wyoming or the County of Laramie.

No implication of state involvement can be drawn from the fact that some members of the Board may be state or county employees. They are only appointed to such positions as a category of community representatives, not to act for the State, but only in their private capacity.

Section 2790(d) of 42 U.S.C. authorizes a private corporation to be "[a] community action agency." It was also provided in § 2791(b) of 42 U.S.C. "that each Board [of Directors] * * * shall consist of not more than fifty-one members and be constituted so that one-third of its members be elected public officials, if available and willing to serve, but their number could be substituted in such case by appointive public officials."

The powers of the Board included power to appoint persons to senior staff positions, determine major personnel, fiscal and program policies, approve overall program plans and policies and approve proposals for financial assistance.

After noting how the Supreme Court of the United States had approached the concept of governmental action, citing cases, the United States Tenth Circuit Court of Appeals in *Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632, 635 (10th Cir.1983) concluded that:

These cases, taken together, impart at least two important principles. First, they recognize that power entrusted to the government by the people can ultimately be exercised through nominally private entities, be it through the government's delegation, compulsion, concerted action, or acquiescence. Second, they provide that when these nominally private parties exercise governmental power, they shall not exercise it insulated from constitutional constraints.

The problem remains in distinguishing the exercise of governmental power from benign or tangential governmental involvement. This problem is resolved by "sifting facts and weighing circumstances" in each case. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

The ultimate holding of the court in *Gilmore* was that:

It is true that the personnel policies were formulated by a board of trustees partially composed of public officials; indeed, we considered the composition of the board highly relevant in our determination that SLCAP is a state actor. However, this characteristic of the board, standing alone, does not compel an inference that the personnel practices formulated by the board are the product of a state policy or decision. Although the public officials serve on the board as representatives of local government and as advocates of governmental objectives, there are no allegations that they represent or advocate a governmental position on personnel policy. Likewise, there is no indication that the Executive Director's decision to terminate Mr. Gilmore's employment in any way reflected a governmental policy or decision. Accordingly, we conclude that the appellant has failed to meet one of the two prongs of the Lugar test, and we hold that there is no state action in this case.

Id. at 638.

The involvement of the State of Wyoming with CALC is the same as the State of Utah with the Salt Lake City Community Action Corporation. There was no Wyoming state action in this case in the discharge of appellant.

### III

■ Since there was no state action by CALC, there can be no exposure to liability in that regard by appellees Linda Burt, Sharon Wisroth and Jerry Baldwin. Everything they did, as there have been alleged they did, was as representatives of CALC.

■ Nor can there be any liability for damages personally by appellees Linda Burt, Sharon Wisroth or Jerry Baldwin by reason of any of their activities with re-

spect to the appellant's discharge from employment. All their involvement was as representatives of CALC and not on their own in the expression of any personal vendetta against appellant. When Sharon Wisroth contacted various members of the Policy Council to encourage their participation in the consideration of appellant's termination acts, it was strictly as a member of the Board, not for any personal malice against appellant. When appellant refused to quit her job after discharge and would not leave the Head Start facility at Warren Air Force Base and appellee Burt and appellee Baldwin obtained assistance from the military police to revoke appellant's pass privileges to enter and leave the base, they were only enforcing and acting as agency director and Board president, respectively, to carry out the will of the Board of CALC, not for any personal purpose.

Appellant's deposition recites that when appellant was asked what Mr. Baldwin did to damage her she responded, "[h]e approved my termination." "Q. Did he do anything else to damage you?" She answered, "No." When asked what he did to interfere with her contract, she responded, "He terminated my employment without the Policy Council's approval." When asked if he did anything else to interfere with the contract, she answered, "No."

A similar line of questioning followed with respect to Sharon Wisroth:

Q. * * * Are there any facts within your knowledge that led you to believe that she did those things for a private purpose?

A. No.

* * * * * *

Q. * * * do you have any reason to believe that she was doing those things for any other reason other than in her official capacity as a member of the board?

A. No.

The same line of questioning took place with regard to Linda Burt. Appellant could supply no facts to lead her to believe Linda Burt was acting for her own private purpose, but was implementing what the Board was directing her to do.

All parties to this lawsuit named as individuals should be dismissed pursuant to the clear terms of W.S. 1-1-117:

(a) In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages, a party may, in lieu of answering or otherwise pleading, file an affidavit certifying that he was not directly or indirectly involved in the occurrence or occurrences alleged in the action. If an affidavit is filed, the court shall order the dismissal of the claim against the certifying party, except as provided for in subsection (b) of this section. The affidavit shall be filed within the time required for filing an answer, if no answer is filed; and, in any event, at least twenty (20) days prior to trial. Any order of dismissal based on the affidavit shall not be entered within ten (10) days after the affidavit is filed.

(b) Any party may oppose the dismissal or move to vacate the order of dismissal and reinstate the certifying party, provided he can show that the certifying party was directly or indirectly involved in the occurrence or occurrences alleged in the action. After the filing of an affidavit under this section, the party opposing the dismissal may have discovery with respect to the involvement or noninvolvement of the party filing the affidavit, provided the discovery is completed within sixty (60) days of the filing of the affidavit.

Appellees Burt, Baldwin and Wisroth were clearly not acting in any individual capacity with respect to the termination of appellant as Director of the Head Start program but only to carry out the dictates of CALC through its Board of Directors. No showing was made by appellant that creates any question of fact to be tried following the filing of affidavits of non-participation, nor can such individuals be charged with the loss of, or interference with, appellant's contract if, indeed, there was a contract. All of the individually named defendants were agents, at the most, protecting the interests of CALC in all their allegedly wrongful misconduct.

They were not strangers to any contract, if there was one between CALC and appellant. *Kvenild v. Taylor*, 594 P.2d 972, 977 (Wyo.1979); Restatement of Torts, Second, § 767(d) and (g), pp. 26–39; Prosser & Keaton, Torts, 5th Ed. 1984, p. 985. Such corporate officers were acting in a bona fide manner, having a responsibility to CALC, and their motives were not personal and no personal interests were involved. Their interest was for the public good and in the best interests of the public and students of the Head Start program.

We decide this case on the merits and we see no need to decide any other issues that may have been raised. Pertinent facts are genuine, requiring no trial, as we see them. There are only questions of law. This was a proper case for summary judgment for CALC and dismissal as to individually named appellees. W.R.C.P. 56. No trial was necessary.

AFFIRMED.