Jean LEONARD, Appellant (Plaintiff),

v.

CONVERSE COUNTY SCHOOL
DISTRICT NO. 2, Appellee
(Defendant).

No. 89–102.

Supreme Court of Wyoming.

March 13, 1990.

Patrick E. Hacker, Cheyenne, for appellant.

J.N. Murdock of Reeves & Murdock, Casper, and Mark R. Stewart of Hickey & Evans, Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Jean Leonard commenced an action against Appellee Converse County School District No. 2, seeking reinstatement as a counselor, recovery of damages, and attorney's fees. The suit arose from the Converse County School Board's decision not to offer Leonard a contract as a continuing contract teacher after she had completed three years of employment as an initial contract teacher. The School District moved for a summary judgment, which the district court granted.

We affirm.

Leonard raises the following issues for our review:

    1. Whether it is arbitrary and capricious for a school district to discharge an employee for reasons contrary to fundamental state policy?

    2. Whether it is arbitrary and capricious for a school district to discharge a teacher by a procedure which violates the district's own rules and regulations?

3. Whether Appellant established a proper cause of action for breach of an express contract?

4. Whether Appellant established a proper cause of action for breach of the implied covenant of good faith and fair dealing?

5. Whether a teacher has a cause of action for breach of a statutory duty?

6. Whether Appellant has established a valid claim for violation of substantive constitutional rights?

7. Whether Appellant has established a claim for violation of due process?

8. Whether material issues of fact exist as to each of the claims precluding summary judgment?

The materials submitted in support of and in opposition to the School District's motion for summary judgment reveal the following facts. In the fall of 1982, Leonard began working for the School District as a guidance counselor at the Glenrock Middle School. The School District hired Leonard as an initial contract teacher, and she worked as such for three consecutive years.[1] During Leonard's employment, the School District maintained a policy and regulation prescribing an evaluation procedure. The policy stated that all professional staff would be evaluated to ensure a quality educational program, and it defined the specific areas which would be evaluated. The regulation required that the program and procedure for the evaluations and a written summary of expected standards be presented to the staff within two weeks of the beginning of the school year. It also contained provisions for informal and formal probationary periods for teachers with unsatisfactory evaluations. Both the regulation and Wyo.Stat. § 21–3–110(a)(xvii) (1977) required that initial contract teachers be evaluated in writing twice a year and receive copies of their evaluations.

In 1983, Leonard received a copy of her evaluation which indicated she needed im-

proved professional rapport. The following year, her evaluation noted improved rapport and indicated that all areas of performance were satisfactory. During her third year as a counselor, Leonard was not evaluated, and, through a letter dated March 15, 1985, the School District informed Leonard that it would terminate her initial contract at the end of the school year. Leonard was never placed on probation under the terms of the evaluation regulation.

Leonard filed a grievance with the School Board, seeking renewal of her contract. After a hearing, the School Board denied Leonard's request, and on September 5, 1986, she filed a complaint with the district court. The complaint alleged that the School District and its employees: (1) breached a legal duty owed to Leonard by failing to follow the evaluation and probationary procedures set out in Wyo.Stat. §§ 21–3–110(a)(xvii) and 21–3–111(a)(vi)(B) (1977) and in its policies and regulations; (2) denied Leonard procedural due process at her grievance hearing and failed to provide her with sufficient reasons for her dismissal; (3) discriminated against her because of her sex and marital status; (4) retaliated against her because of her personal life; (5) violated her substantive due process rights by arbitrarily and capriciously dismissing her; (6) denied her right to academic freedom; (7) violated her right to continued employment; and (8) breached the implied covenant of good faith and fair dealing. Leonard sought reinstatement, damages, and attorney's fees under 42 U.S.C. §§ 1983, 1988, and 2000 (1982). Leonard also sought reinstatement and damages for the School District's negligence, breach of contract, and violation of her constitutional rights.

The School District answered, generally denying the allegations, and filed a motion for summary judgment. The School District's memorandum in support of its mo-

---

1. Wyo.Stat. § 21–7–102(a)(iv) (1977) defines an initial contract teacher as "[a]ny teacher who has not achieved continuing contract status." A continuing contract teacher is "[a]ny initial contract teacher who has been employed by the

same school district in the state of Wyoming for a period of three (3) consecutive school years, and has had his contract renewed for a fourth consecutive school year." Wyo.Stat. § 21–7–102(a)(ii)(A) (1977).

tion maintained that it was entitled to a judgment as a matter of law because Leonard, as an initial contract teacher, had no entitlement to, or reasonable expectation of, reemployment. On April 12, 1989, the district court granted a summary judgment in favor of the School District. In its decision letter, the court, relying upon *Roberts v. Lincoln County School District Number One*, 676 P.2d 577 (Wyo.1984), stated that Leonard was an "untenured" initial contract teacher whose employment was properly terminated. The court further explained that the School District's administrative rules could not abrogate the School Board's authority to terminate the employment of initial contract teachers.[2] This appeal arose from that decision.

The party moving for a summary judgment has the initial burden of establishing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. If the movant establishes a prima facie case, the burden shifts to the party opposing the motion to present specific facts showing a genuine issue of material fact does exist. Conclusory statements or mere opinions are insufficient to satisfy an opposing party's burden. *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73 (Wyo.1989); *Jones Land and Livestock Co. v. Federal Land Bank of Omaha*, 733 P.2d 258 (Wyo.1987).

Leonard contends that the School District's decision not to offer her a new contract was arbitrary and capricious because the School District failed to follow the evaluation requirements set out in its policy, its regulation, and § 21–3–110(a)(xvii). In *Roberts*, 676 P.2d 577, this Court upheld a school district's decision to terminate the employment of an initial contract teacher despite its failure to follow required evaluation procedures. We explained:

> The only statutory requirement for terminating an initial contract teacher is that [the teacher] be notified of the termination no later than March 15 of each year. An initial contract teacher has no statutory right to a statement of reasons for termination or to a hearing. They do not have a claim, entitlement, or reasonable expectation of re-employment. Therefore, they do not have a property interest under state law or otherwise.

*Id.* at 579 (footnote omitted).[3] This Court also stated that the evaluation regulations established by the district did not alter the initial contract teacher's rights because they "were primarily for the benefit of the school district in performing its operational and supervisory duties." *Id.* at 581.

In this case, the School District argues that it adopted the evaluation policy primarily for use in performing operational and supervisory duties and not for the primary purpose of protecting initial contract teachers. We agree. The evaluation rules did not protect initial contract teachers from dismissal because, as teachers without tenure, they could be dismissed even after receiving favorable evaluations. *Id.* In addition, the policy stated that the primary purpose for teacher supervision and evaluation was to develop staff and improve teaching. We hold that, even if the evaluation rules had a secondary purpose relating to termination or retention, they did not give initial contract teachers a claim to, entitlement to, or reasonable expectation of reemployment. *Id.* at 580 (citing *Willis v. Widefield School District No. 3*, 43 Colo.App. 197, 603 P.2d 962 (1979)). The School District's failure to follow the evaluation requirements did not result in an arbitrary and capricious decision to terminate Leonard's employment.

Leonard also asserts that the School District's policy and regulation were incorporated into her employment contract and that the School District breached the con-

**2.** Wyo.Stat. § 21–7–105 (1977) provided:
> An initial contract teacher who has taught in the system continuously for a period of at least ninety (90) days shall be hired on an annual basis and shall be notified in writing of termination, if such is the case, no later than March 15 of each year.

This section was amended in 1987 by substituting "April" for "March."

**3.** In 1987, the legislature changed the date in Wyo.Stat. § 21–7–109 (1977) from March 15 to April 15.

tract by failing to follow them.[4] In *Roberts*, 676 P.2d 577, this Court addressed the same breach of contract issue which was premised on similar contractual provisions. We held that, "[a]lthough the contract is specifically subject to the 'policies, rules, and regulations of the school district,' these particular provisions did not operate to afford appellant any contractual right of employment." *Id.* at 582. We also stated that the board could not abrogate its statutory authority to terminate initial contract teachers. *Id.*

■ In this case, Leonard's contract and Wyo.Stat. § 21–7–112 (1977) incorporated the evaluation policy and regulation, but those rules did not create a contractual right of employment. A contrary result would be in conflict with a school district's authority to terminate the employment of initial contract teachers. Wyo.Stat. § 21–7–105 (1977); *Roberts*, 676 P.2d 577. Section 21–7–112 specifically states that school district policies, rules, and regulations cannot be in conflict with Wyoming laws. Thus, we hold that the School District's violation of its evaluation policy and regulation and of § 21–3–110(a)(xvii) did not constitute an actionable breach of contract.

■ Leonard also asks this Court to adopt and apply the implied covenant of good faith and fair dealing and the public policy exception to the employment-at-will doctrine. Both theories serve as excep-

tions to the employment-at-will doctrine by granting an employee greater rights to sue his employer for termination of his employment. *Nelson*, 777 P.2d 73; *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985). This Court has previously held that the implied covenant of good faith and fair dealing does not apply to at-will employment relationships because either party may terminate an at-will contract for any reason, without reason, or for the wrong reason. *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702 (Wyo.1985). We have recognized a limited cause of action to vindicate the public policy of compensating workers for work-related injuries. *Griess v. Consolidated Freightways Corporation of Delaware*, 776 P.2d 752 (Wyo.1989).[5]

■ We now hold that the implied covenant of good faith and fair dealing and the public policy exception to the employment-at-will doctrine do not apply to the termination of employment contracts between school districts and initial contract teachers. The adoption of these theories would alter the tenure status of initial contract teachers defined in Wyo.Stat. § 21–7–109 (1977) and explained in *Roberts*, 676 P.2d 577. The power to modify that status belongs to the legislature.

Leonard's remaining arguments relate to her claim that the School District's decision not to offer her a fourth contract was made

---

**4.** The following two contract provisions apply to Leonard's assertion:

4. It is understood and agreed between the parties that this contract is subject to the applicable laws of the State of Wyoming, the duly adopted rules of the State Board of Education and the policies of this District which are, by reference, incorporated herein and made a part of this agreement the same as if fully set forth herein.

\* \* \* \* \* \*

6. Any person signing a contract for a fourth consecutive full school year shall be placed on a renewable contract status pursuant to Section 21–7–102, Education Code of 1969 as amended, 1981.

Wyo.Stat. § 21–7–102(a)(ii) (1977) states in pertinent part:

"Continuing Contract Teacher".—(A) Any initial contract teacher who has been employed by the same school district in the state

of Wyoming for a period of three (3) consecutive school years, and has had his contract renewed for a fourth consecutive school year[.]

Wyo.Stat. § 21–7–112 (1977) provides:

The contracts of all teachers in the state of Wyoming from and after the effective date of this act shall be subject to the policies, rules, and regulations of the school district *not in conflict with this law or the other laws of the state of Wyoming.*

(Emphasis added.)

**5.** In *Griess*, 776 P.2d at 754, we held that an employee

whose employment is terminated for exercising rights under the worker's compensation statutes and who is not covered by the terms of a collective bargaining agreement has a cause of action in tort against the employer for damages.

on the basis of constitutionally impermissible grounds. Leonard contends that she is entitled to relief under 42 U.S.C. § 1983 (1982) because the School District terminated her employment due to her marital status, her residency, her personal life, and the fact that she reported incest cases to government agencies.[6]

■ Leonard correctly states that a school district's decision to terminate the employment of a teacher without tenure must not violate constitutionally protected interests. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Roberts*, 676 P.2d 577. To prevail under this principle, however, Leonard must first meet her burden in opposing the School District's motion for summary judgment. *Jones Land and Livestock Co.*, 733 P.2d 258. In *Nelson*, 777 P.2d at 77, we stated that "[e]vidence opposing a summary judgment that is conclusory or speculative is insufficient and the trial court has no duty to anticipate possible proof." In opposition to the School District's motion, Leonard presented the depositions of the Glenrock Middle School principal, the school district superintendent, and five school board members. After reviewing those depositions, we conclude that Leonard failed to demonstrate the existence of a genuine issue of material fact which would preclude summary judgment as a matter of law. The materials supporting Leonard's contention that the School District terminated her employment in violation of her constitutionally protected rights were merely speculative and conclusory. Hence, the School District is entitled to a judgment as a matter of law.

Affirmed.

GOLDEN, J., filed an opinion concurring in part and dissenting in part in which URBIGKIT, J., joined.

GOLDEN, Justice, concurring in part and dissenting in part, in which URBIGKIT, J., joins.

Although I concur in most aspects of the majority opinion, I dissent from that part of it that holds that "the public policy exception to the employment-at-will doctrine [does] not apply to the termination of employment contracts between school districts and initial contract teachers."

This court identified the rationale supporting the public policy exception to the at-will rule in *Allen v. Safeway Stores, Incorporated*, 699 P.2d 277, 284 (Wyo. 1985):

A tort action premised on violation of public policy results from a recognition that allowing a discharge to go unredressed would leave a valuable social policy to go unvindicated.

As it was so aptly put by the Arizona Supreme Court in *Wagner v. City of Globe*, 150 Ariz. 82, 722 P.2d 250, 255–56 (1986),

[e]mployees should not have to choose between their jobs and the demands of important public policy interests * * *. [E]mployees should not be discharged because they performed an act that public policy would encourage * * *.

A fundamental principle of Wyoming's public policy is our commitment to protect children from abuse or neglect. If a school district can decide not to renew a school counselor's employment contract based in substantial part on that counselor's fulfilling a statutory obligation of reporting suspected child abuse and neglect and of cooperating with law enforcement authorities and child protection agencies, then very soon that school counselor will stop reporting and cooperating. The unacceptable end result is that child abuse and neglect will go unreported and children will continue to be harmed.

Wyoming's clearly defined and well-established public policy concerning child

---

6. Leonard also asserts that the School District deprived her of her property right in continued employment without due process in violation of the fourteenth amendment to the United States Constitution. This argument has no merit because we have determined that Leonard, as an initial contract teacher, did not have a claim to, entitlement to, or reasonable expectation of reemployment.

Wyo.Stat. § 14–3–205 (1977) imposes a duty to report cases of child abuse and neglect.

abuse finds expression in W.S. 14–3–104 through 215 (July 1986 Repl.). In particular, § 14–3–205(a) provides that any person who has reasonable cause to suspect that a child has been abused or neglected shall immediately report it to the child protection agency or local law enforcement agency. Under § 14–3–205(b), if a staff member of a school suspects child abuse or neglect, that staff member shall notify as soon as possible a person in charge who is also responsible to report the matter. But the reporting staff member is not relieved of his or her obligation to report in the first instance. Under § 14–3–212, the creation of multi-disciplinary child protection teams within the communities in the state is encouraged. Among the members of that team is a designated representative from the school district. The local child protection teams are to facilitate diagnosis and prognosis and provide an adequate treatment plan for the child and the child's family. Under § 14–3–214, a child counselor employed by the school may attend interviews of a child that are conducted on school property by law enforcement personnel or child protective agency personnel.

School counselors and teachers in particular are serving in the trenches in our society's war against child abuse. Any chilling of that obligation to report and cooperate cannot be tolerated. Our children are much too precious and valuable a resource to be sacrificed in the name of the "at-will" doctrine. We have recognized and adopted a public policy exception for the worker who files a worker's compensation claim. *Griess v. Consolidated Freightways Corporation of Delaware*, 776 P.2d 752 (Wyo.1989). This court surely has the courage to recognize and adopt a public policy exception which will inure to the benefit of abused and neglected children.

Keeping this public policy in mind, our fidelity to the bedrock principles of summary judgment law requires us to examine the record in the light most favorable to Ms. Leonard, the party against whom the summary judgment was entered, and give her the benefit of all favorable inferences which reasonably can be drawn from the record evidence.

The record evidence surrounding the reasons for principal Dodd's recommendation that Ms. Leonard's employment contract not be renewed shows the following:

1. Leonard's deposition testimony:
   • "And Mr. Dodd * * * said to me, something about don't discover any more incest cases, and he kind of laughed. And I guess I had a little difficulty with that. I didn't think it was very funny. * * * I felt that he really meant it * * *."

2. Dodd's deposition testimony:
   • When asked if he intended that Ms. Leonard should not work with incest and abuse matters and alcoholic parents, Dodd testified, "It would be my intent that [she] recognize the limit to which a school counselor can do that and still do the normal things * * *."
   • When asked if she did more for abused children than Dodd wanted her to do, Dodd testified, "I would have to say in terms of the total context of the job she spent more time with them than could be provided within the school setting at the expense of the other group of students."
   • When asked if the special cases were taking more time than Dodd felt she could afford as a counselor, Dodd answered, "Unfortunately, yes."
   • Against the backdrop of the amount of time involved in reporting abuse cases and in cooperating with investigations by the law enforcement authorities in such cases, Dodd testified, "For the way all of this impacted upon the total school program, it was my professional judgment that too much time was being spent there."

3. Assistant school superintendent Hoyt's deposition testimony:
   • In early March, Hoyt asked Dodd to explain why he did not recommend Ms. Leonard for renewal of her contract. Hoyt testified, "If I can recall his phrasing, there was a lack of balance between dealing with those more severe cases and what he perceived as

being her major responsibility as far as a school counselor was concerned."

• According to Hoyt, Dodd's reasons for his nonrenewal recommendation were her need to listen, her rapport with other staff members, and the "balance."

After reviewing the record and evidence in the light most favorable to school counselor Leonard and being of the view that Wyoming has a clearly defined and well-established public policy regarding the reporting of child abuse and neglect and of cooperating with the authorities in such matters, I find that genuine issues of material fact exist concerning the school district's reasons for failing to renew Ms. Leonard's contract. I would reverse and remand for a jury trial on that issue.