**Judith WARE, Appellant (Plaintiff),**

v.

**CONVERSE COUNTY SCHOOL DISTRICT NO. 2, Appellee (Defendant).**

**No. 89–69.**

Supreme Court of Wyoming.

April 6, 1990.

Bernard Q. Phelan, Cheyenne, for appellant.

Alan B. Minier of Hirst & Applegate, Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Judith Ware sued Appellee Converse County School District No. 2, seeking damages for breach of her employment contract and breach of the School District's duty to follow its policies and regulations. Ware alleged that those breaches were the result of the School District's failure to follow its intra-district transfer policy, which required notification of vacant positions. The district court granted the School District's motion for summary judgment.

We affirm.

Ware presents the following issues:

I

Was there a genuine issue of material fact regarding Appellant's breach of contract claim?

II

Was there a genuine issue of material fact as to the claim for breach of the contractual duty of good faith and fair dealing?

Ware signed an employment contract with the School District to work as a custodian at the Glenrock Middle School from July 1, 1985, to May 31, 1986. The contract provided that either Ware or the School District could terminate the contract at any time for sufficient cause and that:

[T]he District agrees to re-employ the employee for the succeeding fiscal and/or school year at a rate not less than the amount listed above unless it gives notice to the contrary on or before June 1st; provided the employee is re-employed for the same duties and provided the employee meets any new or changed qualifications[.]

The contract also stated:

[T]his contract is subject to laws of the State of Wyoming; to all rules and regulations of the State Board of Education including necessary licensing or certification; to the District Board of Education policies and to all amendments and revisions thereof[.]

During the term of Ware's employment, the School District maintained an intra-district transfer policy which stated:

**When a classified position vacancy occurs within the staff, notice of such vacancy will be posted in each school building of the district for a period of five working days.** Employees of the district who qualify for the vacancy and who wish to transfer to that position and building must complete the "Request for Intra–District Transfer" form; have the form signed by the Principals; and submit the form to the Assistant Superintendent's office by the end of the fifth working day from the date of posting. (Emphasis added.) The School District also utilized a reduction in force (RIF) policy which provided in pertinent part:

When, in the sole, exclusive, and final judgment of the Board, decline in enrollment, reduction of program, or any other reason requires reduction in classified staff, the administration will attempt to accomplish that by attrition. In the event that necessary reduction in staff

cannot be adequately accomplished by attrition and given the necessity to hire or maintain the most competent and qualified staff available in the interests of perpetuating the highest quality program possible, the administration will base its decision as to resulting contract renewals on the relative skill, ability, competence, and qualifications of available staff to do the available work.

Sometime before May 8, 1986, the School District learned that Kathleen Williams, a high school custodian, intended to vacate her position at the end of the 1985–86 school year. The School District planned to authorize the transfer of Tom Hoyt, an elementary school custodian, to that position because the School District was eliminating his position under its RIF policy. Hoyt was the son of the assistant superintendent.

On May 8, 1986, the School District's board accepted Williams' resignation and approved Hoyt's contract for the following year. On that date, the board also decided to eliminate Ware's position under the RIF policy. The superintendent subsequently ordered that Ware be given an opportunity to compete for the high school position and instructed Hoyt's father to remove himself from the hiring process. The School District did not post notice of the vacancy in accordance with its transfer policy.

Through a letter dated May 12, 1986, Ware received notice that her position was being terminated and that she could apply for the vacant position. Two School District employees interviewed Hoyt and Ware, and they recommended that Hoyt be offered the vacant position. Hoyt received the job.

On January 20, 1988, Ware filed a lawsuit, alleging that the School District had failed to follow its transfer policy which required the School District to post notice of a classified position vacancy in each school building for five working days. Ware asserted that the School District filled a vacant position in violation of its policy and caused her incidental and consequential damages. Ware sought recovery on the following theories: breach of contract, negligence, tort, and breach of the implied covenant of good faith and fair dealing.

The School District moved for a summary judgment, which the district court granted on February 8, 1989. In its decision letter, the court stated that Ware had an equal opportunity to apply for the vacant position and that she was not prejudiced by the School District's failure to comply with the transfer policy.

The grant of a summary judgment is proper if no genuine issue of material fact exists and if the prevailing party is entitled to a judgment as a matter of law. *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1*, 763 P.2d 1255 (Wyo.1988); *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District Number One*, 763 P.2d 843 (Wyo.1988). In this case, the parties do not dispute the fact that the School District failed to follow its intra-district transfer policy. The question is whether that omission constituted an actionable breach of contract or an actionable breach of the implied covenant of good faith and fair dealing.

■ Ware argues that her contract incorporated the School District's intra-district transfer policy and that the School District breached her contract when it failed to post notice of the vacancy in accordance with that policy. The facts in this case are analogous to the facts in *Leonard v. Converse County School District No. 2*, 788 P.2d 1119 (Wyo.1990). In that case, we held that the school district's failure to follow its policy and regulation, which required written evaluations of initial contract teachers, did not constitute an actionable breach of contract because, " '[a]lthough the contract is specifically subject to the "policies, rules, and regulations of the school district," these particular provisions did not operate to afford appellant any contractual right of employment.' " *Id.* at 1122 (quoting *Roberts v. Lincoln County School District Number One*, 676 P.2d 577, 582 (Wyo.1984)). The school district's failure to evaluate Leonard

did not affect its authority to terminate her employment. *Leonard,* 788 P.2d 1119.

In this case, Ware, like an initial contract teacher, did not have a contractual right to employment after the expiration of her contract. Ware's contract provided that the School District agreed to reemploy Ware *unless* it gave notice to the contrary on or before June 1st. Timely notice was the only contractual constraint on the School District's power to terminate Ware's employment after her contract expired.

In addition, the intra-district transfer policy contained the following provision: "Nothing in this policy alters administratively determined transfers which are implemented in consideration of the best interests of students and the needs of the district." This provision gave the School District the discretion to make transfer decisions notwithstanding the remainder of the intra-district transfer policy. Absent a showing of an abuse of that discretion, we will not interfere with the School District's decision. *Hyatt v. Big Horn School District No. 4,* 636 P.2d 525 (Wyo.1981). Ware has failed to present us with any evidence indicating such an abuse. We hold that the School District's failure to post notice in accordance with its intra-district transfer policy did not constitute an actionable breach of contract.

■ Ware also asserts that the School District breached the implied covenant of good faith and fair dealing by not following its intra-district transfer policy. *See generally Nelson v. Crimson Enterprises, Inc.,* 777 P.2d 73 (Wyo.1989) (discussing the implied covenant of good faith and fair dealing). We have previously held that this covenant does not apply to the termination of at-will employment relationships, *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985), or to the termination of contracts between school districts and initial contract teachers. *Leonard,* 788 P.2d 1119. This Court, however, has adopted and recently utilized the Restatement (Second) of Contracts § 90(1) (1981) in response to a claim for wrongful discharge of an employee. *McDonald v. Mobil Coal Pro-*

*ducing, Inc.,* 789 P.2d 866 (Wyo.1990). Section 90(1) provides:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

We held that an employee's expectation of employment could be altered by an employer's representation if: (1) the employer should have reasonably expected the employee to consider the representation as a commitment from the employer; (2) the employee reasonably relied upon the representation to his detriment; and (3) injustice could be avoided only by enforcement of the representation. *McDonald,* 789 P.2d 866.

The record in this case, examined from the vantage point most favorable to the party opposing the motion, *Baros v. Wells,* 780 P.2d 341 (Wyo.1989), fails to reveal a genuine issue of material fact which would preclude summary judgment under the *McDonald* standard. Notwithstanding a determination of whether the School District reasonably expected Ware to consider its policy as a commitment, the record indicates that the School District's failure to follow the policy was neither detrimental nor unjust to Ware. The School District provided Ware with actual notice of the vacant position. She interviewed for the position and was evaluated according to the same standards as was the other applicant. The School District had no duty to reemploy Ware because it properly notified her of its decision to terminate her employment. Thus, we hold that the School District's failure to follow its intra-district transfer policy did not alter Ware's expectation of reemployment, and, therefore, the School District is entitled to a judgment as a matter of law.

Affirmed.

URBIGKIT and GOLDEN, JJ., filed dissenting opinions.

URBIGKIT, Justice, dissenting

I dissent. This court should reverse the summary judgment granted by the district court by acknowledging that an implied covenant of good faith and fair dealing accompanies this employment contract and that under such covenant, a question of material fact exists to preclude summary judgment. *Reed v. Municipality of Anchorage*, 782 P.2d 1155 (Alaska 1989). The violation by the Converse County School District No. 2 (School District) of its own policy and the imprimatur of nepotism combine to present a question whether Judith Ware (Ware) was treated in good faith and fair dealing during her contract term as a school district employee.

This court should recognize that implied covenants of good faith and fair dealing accompany those public employment contracts which are not merely at-will. Public employment contracts should at least align with general contract law. *See* Restatement (Second) of Contracts, § 205 at 99 (1981).[1] In *Reese v. Dow Chemical Co.*, 728 P.2d 1118, 1120 (Wyo.1986), this court harmonized jury findings after a trial court instructed the jury how to calculate damages for "breach of the implied covenant of good faith and fair dealing" despite the fact the court did "not address" appellee's cross-appeal issue that such a covenant is not recognized in Wyoming. But that harmonization seems to require tacit recognition of such a covenant. This court would presumably correct, under W.R.A.P. 7.05, a jury instruction which informed a jury how to calculate damages for breach of an implied covenant of good faith and fair dealing if no such covenant operated in Wyo-

ming. *See Baird v. School Dist. No. 25, Fremont County*, 41 Wyo. 451, 458, 287 P. 308, 310 (1930).

Beyond *Reese*, my conclusion that such a covenant exists is reinforced by cases which narrowly hold that at-will contracts are not accompanied by any implied covenant of good faith and fair dealing. *See Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73, 76 n. 3 (Wyo.1989); *Chasson v. Community Action of Laramie County, Inc.*, 768 P.2d 572, 575 n. 1 (Wyo.1989); *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1064 (Wyo.1986); *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 704 (Wyo.1985); and *Rompf v. John Q. Hammons Hotels, Inc.*, 685 P.2d 25, 28 (Wyo. 1984) (specifically reserving the question).

Based on such an inference and case law from other states,[2] I would hold there is a question of material fact, *see Cordova v. Gosar*, 719 P.2d 625, 639–40 (Wyo.1986), whether Ware was treated fairly **during** the time her contract was in effect—despite the possibility that such a breach could be detected only after the contract had terminated. As such, I would hold that the summary judgment was premature. A jury trial should be provided to resolve whether or not the facts support the complaint that the implied covenant of good faith and fair dealing was breached. *Fiscus v. Atlantic Richfield*, 773 P.2d 158, 161 (Wyo.1989); *Davenport v. Epperly*, 744 P.2d 1110, 1113 (Wyo.1987).

Viewing the record in the light most favorable to Ware, we can infer the following scenario. Ware became aware of a prospective vacancy due to a colleague's ex-

1. Most recently in *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73, 76 n. 3 (Wyo.1989), this court declined to decide whether at-will employment arrangements contained an implied contract of good faith and fair dealing. *Cf. Chasson v. Community Action of Laramie County, Inc.*, 768 P.2d 572, 575 n. 1 (Wyo.1989). Despite the perspective of this majority, this case does not appear to be an at-will personal service contract. Ware had an employment contract which incorporated by reference a transfer policy and reduction in force (RIF) arrangement. Ware's complaint centers on events which occurred while her contract was in effect. *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364 (1987).

2. *See* Restatement (Second) of Contracts, *supra*, at § 205, which states "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *See also Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983); *Bodenhamer v. Superior Court (St. Paul Fire & Marine Ins. Co.)*, 192 Cal.App.3d 1472, 238 Cal.Rptr. 177 (1987); *Perkins v. Thompson*, 551 So.2d 204, 209 (Miss. 1989); *UHS–Qualicare, Inc. v. Gulf Coast Community Hosp., Inc.*, 525 So.2d 746, 757 (1987), *reh'g dismissed* 525 So.2d 758 (Miss.1988); and *Mahan v. Farmers Union Cent. Exchange, Inc.*, 768 P.2d 850, 856 (Mont.1989).

pected resignation at the end of the year. Knowing her own position was in jeopardy by a district RIF decision, she went to the assistant superintendent for personnel to find out how she might apply to fill that vacancy. School personnel gave the assistant superintendent's son the right to transfer to the soon-to-be-vacated position without giving Ware any opportunity to apply for the position even though Ware had seniority. The son had not even applied for the position nor had the school personnel complied with established school district policies when that decision was made. Although the school district attempted to soften the appearance of unfairness by later staging a formal interview for both the son and Ware, it is possible to infer from the record that a nepotic benefit occurred.[3]

Ware's employment contract, drafted by the School Board and school administrators, stated that the terms of the contract were subject to the policies of the School Board. School Board policy required that notice of a job vacancy within the staff be posted for five days. No notice was posted for the job eventually awarded to the son of the assistant superintendent (personnel officer). On May 8, 1986, the School Board accepted the resignation of Kathy Williams

after the decision had already been made by school district personnel to transfer the assistant superintendent's son to the high school once Williams' resignation was accepted. While the son was given representations that he would have the job at the high school, that representation was later "withdrawn" to allow Ware to interview for the job. On May 9, Ware was notified her position was being terminated. Both Ware and the son formally applied for Williams' old position and both were interviewed by people subordinate to the assistant superintendent. Not very surprisingly, based on their recommendation, the son of the assistant superintendent was rewarded the vacated position.

While the decision to employ the son of the assistant superintendent may have been unaffected[c] by nepotism after Ware was provided a formal opportunity to apply for the new position, the appearance of unfairness and the fact that the hiring decision occurred after the school district violated its own policy creates a question of material fact regarding a possible breach of the implied covenant of good faith and fair dealing. Reasonable inferences from the record preclude summary judgment being used to absolve the employer without

---

**3.** Ware summarizes her critique of events by statement in appellate brief:

Early in the year, it became known in the District that there were to be cutbacks in staffing and appellant was concerned about the continuation of her job. * * * A fellow custodian, Kathy Williams, informed Mrs. Ware that she would be resigning her position at the high school at the end of the year and suggested appellant apply for the vacated position. * * *

Mrs. Ware's supervisors recommended that she contact Jim Hoyt, the Assistant Superintendant [sic] and father of Tom Hoyt, another custodian in the District. * * * Appellant called Mr. Hoyt and inquired as to how she could apply for the anticipated vacancy. Mr. Hoyt was not then aware of the planned Williams resignation, but informed Mrs. Ware that the vacancy had to be posted for five days and that she should apply for an intra-district transfer as provided in the School District Policies. * * *

In May, 1986, some eight months later, the Board of Trustees met and the resignation of Kathy Williams occurred as anticipated by Mrs. Ware. * * * Also as anticipated by Mrs. Ware, her position was eliminated. * * *

However, the Board, without posting the required notice or allowing other employees to apply for transfer, and upon the recommendation of Jim Hoyt, approved the hiring of Tom Hoyt, his son, whose previous custodial job with the District was also eliminated, to fill the position vacated by Kathy Williams. * * *

After the meeting, appellant's supervisor informed her that her position had been eliminated and that Kathy Williams had resigned. * * * The next day, he helped her contact Jim Hoyt with the expectation that she could apply for the vacated position in the manner provided in the rules incorporated in Mrs. Ware's contract. * * *

Upon meeting with Jim Hoyt that afternoon, appellant was informed by him that the position was already filled and that she could not apply for it. * * * She queried as to why this was the case since the position had only been vacated the night before. Appellant was informed by Mr. Hoyt that the administration ran the district and that "... we'll do what we want to do."

establishing the facts in a jury trial. A jury may or may not conclude that school district administrators violated Ware's contractual rights under an implied covenant of good faith and fair dealing. *Mobil Coal Producing, Inc.,.* 704 P.2d 702; *Mitford v. de Lasala,* 666 P.2d 1000 (Alaska 1983); *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985); *Crenshaw v. Bozeman Deaconess Hosp.,* 213 Mont. 488, 693 P.2d 487 (1984); *K Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364 (1987). *Cf. Morriss v. Coleman Co., Inc.,* 241 Kan. 501, 738 P.2d 841 (1987) and cases cited therein.

In rejecting majority opinion impalement of rights of the employee on first horn by denial of any employee right or benefit from school district policies and employment regulations, I similarly challenge hanging the decision on the second horn by asseveration of at-will employment. This case involves a female career custodian with the Converse County School District who had a written contract and, within its provisions, was denied an application opportunity. That opportunity was sought in light of the prospective reduction in force. Nothing whatsoever was provided by school district policy or direction or other advice given the employee which would suggest a transfer policy only to be effective for transfers within the current employment year. Likewise, the reduction in force policy was written in similar language and obviously related to a future year as well as present year staffing.

I believe that the summary judgment disposition should be reversed and remanded for a trial on the merits. *Wagenseller,* 710 P.2d 1025.

GOLDEN, Justice, dissenting.

I respectfully dissent.

In violation of our immutable principles of summary judgment law, the majority opinion has failed to examine the record in the light most favorable to Ms. Ware, and has failed to give her the benefit of all favorable inferences which can reasonably be drawn from the evidence submitted. The majority opinion also fails to recognize that the school district failed to meet its summary judgment burden of producing sufficient evidence to establish the nonexistence of genuine issues of material fact. There are obvious questions of material fact that stem from the crucial issue here: whether the school district breached its employment contract with Ms. Ware by its failure to follow an express school district vacancy-filling policy, which by law was incorporated into and became a binding term of that employment contract. *See Keslar v. Police Civil Service Commission,* 665 P.2d 937 (Wyo.1983); and *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

After carefully studying the record and applying this court's summary judgment principles, I am satisfied that the school district failed to prove that it followed its express policy governing the procedure for filling the custodian vacancy at its high school. That vacancy-filling policy and procedure *required* the school district to post the notice of the vacancy for five days; this was not done. Further, the policy *required* that interested employees complete a transfer form, have a principal sign the form, and submit the form to the assistant superintendent. Tom Hoyt, the assistant superintendent's son, who was ultimately given the job, failed to meet any of these requirements. In contrast, Ms. Ware faithfully met those simple, express requirements; however, she was not chosen and the selection process was contrary to policy. This policy was clearly intended to protect the interest of a classified staff employee like Ware. *Cf. Roberts v. Lincoln County School District, No. 1,* 676 P.2d 577, 580 (Wyo.1984).

Let us be clear about the facts as I fear the majority opinion has glossed over them. Ms. Ware was employed under a written employment contract as a custodian at the middle school. Tom Hoyt, son of Jim Hoyt who is the assistant superintendent for personnel, was similarly employed as a custodian at the elementary school. Incorporated into both of these employment contracts was a school district policy that governed

the procedure under which custodian vacancies would be filled.

In August, 1985, Ware learned that Ms. Williams, a custodian at the high school, would be resigning from that position in May, 1986, thus creating a vacancy. Ware also believed her own position might be eliminated. Predictably, she was interested in the upcoming vacancy and asked Jim Hoyt if she could apply. He did not know about Williams' plan to resign, but he told Ware that when and if the vacancy became a reality, the vacancy would be posted and interested persons could apply in accordance with the express policy and procedure. As this low drama unfolded, Tom Hoyt, the assistant superintendent's son, did not know until nearly a year later in June, 1986, that Williams' custodian position at the high school would be vacant or that his elementary school custodian position was, like Ware's, on the chopping block. The junior Mr. Hoyt states this in his deposition testimony.

During the 1985–86 school year the school district superintendent Scheer learned of Williams' probable resignation and of the planned elimination of Tom Hoyt's custodian position at the elementary school. The record is unclear as to an exact date Scheer came to know this information. The record is also unclear about what discussions were held; there was some talk but no action at the administrative level about transferring Tom Hoyt to fill the high school custodian's vacancy after Williams resigned. The record does not show that such a transfer ever officially or unofficially occurred before June, 1986.

At the school board's meeting on May 8, 1986, the board accepted Williams' resignation as a high school custodian. The board then eliminated Ware's custodian position at the middle school and Tom Hoyt's custodian position at the elementary school, effective at the end of their contract periods. In Ware's case, the contract would expire May 31, 1986.

On May 9, 1986, the day after the board meeting, Mr. Dodd, the middle school principal, told Ware that the board did not renew her contract, but that she could apply for a transfer to the high school custodian vacancy created by Williams' resignation. Dodd then called Jim Hoyt, the assistant superintendent for personnel, and also Tom Hoyt's father, and told the senior Mr. Hoyt that Ware was coming over to see him and apply for that position.

On May 9, 1986, at Jim Hoyt's office, Ware told him she wanted to apply for the high school custodian vacancy. Jim Hoyt told her she could not because it had already been filled. *He would not tell her who had filled it.* According to his deposition testimony, Tom Hoyt did not know that his elementary custodian position had been eliminated; did not know that Williams had resigned, leaving a vacancy; had not applied for a transfer so that he might fill the high school custodian position; and had not been told by anyone that he was going to be transferred to that now vacant position.

In response to Jim Hoyt's telling Ware that the high school custodian vacancy had been filled, Ware asked him how that could be since Williams had only resigned as of the night before. Ware knew that school district policy and procedure *required* vacancies to be posted for five days and that interested persons had to apply, and complete a transfer form, and have that form signed by a principal and delivered to Jim Hoyt. In terse reply, Jim Hoyt told her, "This administration runs this school district, and we'll do what we want to do."

Wanting to know who was filling the vacancy, Ware next talked to Betty Simon, head custodian at the elementary school. Simon told her the vacancy had been filled by Tom Hoyt. Remember, Tom Hoyt still did not know about any of this. According to his deposition testimony, he did not know about the vacant position until the end of the school year in June when Betty Simon, his head custodian, and his father, Jim Hoyt, told him to get over to the high school and tell the principal and head custodian there that he was interested in applying. Tom Hoyt further testified that he *never filled out and submitted a transfer form as required* by school district policy and procedure.

On May 10, 1986, superintendent Scheer called Ware to his office. He told her there had been some confusion about the vacant custodian position and she would be interviewed for the vacancy after all by the high school principal, Christain, and the head custodian, Roumell. On May 12, superintendent Scheer wrote a letter to Ware (which she received May 13) which stated her contract had not been renewed. He also informed her that she could apply for the vacancy at the high school *by completing the required transfer form* available at her principal's office. Ware completed the transfer form and applied for the vacancy.

According to superintendent Scheer's deposition testimony, when he learned that both Tom Hoyt's position and Ware's position were being eliminated and that Williams' resignation would create a vacancy in which Tom Hoyt and Ware would be interested, he told Jim Hoyt to remove himself from the selection process. Although the record is not clear as to when Scheer told this to Jim Hoyt, one would reasonably infer that surely the school superintendent, of all people, would have known about these position eliminations and the vacancy *before* the board meeting on May 8 and *before* Jim Hoyt's telling Ware that the vacancy had been filled on May 9. These facts and inferences raise glaring questions that go to the heart of Ware's claim that the school district did not follow its policy and did not treat her fairly.

Additionally, Scheer's testimony indicates that Christain and Roumell were to interview Ware and Hoyt and inform Scheer of their evaluations. Next, he would review their evaluations, make a recommendation to the board, which would decide who filled the vacancy. Again the record is not clear, but apparently Christain and Roumell interviewed Ware first, then Tom Hoyt. According to Tom Hoyt's deposition testimony, right after his June interview with Christain and Roumell, they told him he had the job. How could this be if the selection had to go through Scheer and then to the board for the decision? Ware is entitled to a trial to sort this out.

There is no record evidence that the board, acting on Scheer's recommendation, decided in favor of Tom Hoyt.

According to Jim Hoyt's deposition testimony, he failed to post the notice of the vacancy created by Williams' resignation; he failed to follow school district policy and procedure. According to his son's deposition testimony, the son never filled out a transfer form and never submitted the required transfer form. Like father like son—neither one complied with the *required* school district policy and procedure, and yet Tom Hoyt got the job. Ware, who did comply with the policy in every respect, did not get the job.

The majority opinion concludes that Ware was given an equal opportunity to be selected to fill the vacancy. I fail to find anything in the record to support this conclusion; what I do find in the record is substantial evidence to support the conclusion that Ware was not given an equal opportunity. Since the school district failed in its summary judgment burden as the moving party, I would reverse the trial court and remand for trial.