John Raymond DUART, Plaintiff,

v.

FMC WYOMING CORP., a Delaware corporation, Defendant.

No. 93–CV–0349–J.

United States District Court, D. Wyoming.

Aug. 5, 1994.

1450

Bruce S. Asay, Cheyenne, WY, for plaintiff.

James E. Fitzgerald, Fitzgerald Law Offices, Cheyenne, WY, and Stacy Shartin, Seyfarth, Shaw, Fairweather & Gerladson, Los Angeles, CA, for defendant.

### ORDER ON DEFENDANT'S MOTION TO DISMISS and MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

The Motion to Dismiss and Motion for Summary Judgment or Partial Summary Judgment filed by defendant FMC Wyoming Corporation came before the Court for consideration, having been submitted to the Court on briefs of the parties. The Court, having considered the defendant's motions, the plaintiff's responses thereto, and being fully advised in the premises, FINDS and ORDERS as follows:

## Background

Plaintiff's complaint asserts claims for relief against defendant, including causes of action 1) under the Age Discrimination in Employment Act[1] ("ADEA"), 2) a state law based claim for breach of contract and/or promissory estoppel, 3) a state law claim for breach of the covenant of good faith and fair dealing; and 4) a state law claim for negligent infliction of emotional distress. He seeks compensatory relief, punitive damages as well as attorney's fees and costs.

■ Plaintiff was employed by FMC as an Engineering Technician IV at the defendant's Green River operation between October 7, 1991 and February 5, 1993. Plaintiff was born on December 15, 1934, and was 56 years old at the time of his employment with FMC.[2] Plaintiff's immediate supervisor at FMC was Lynn Larson. Plaintiff claims that from the beginning of his employment, Ms. Larson was antagonistic toward him and "seemingly sought to effect his termination." Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment or Partial Summary Judgment, at 2.

Plaintiff asserts that he attempted to work satisfactorily but could never seem to please Ms. Larson, although he claims he worked well for other supervisors. Lynn Larson prepared and discussed with plaintiff a written six-month performance review on March 27, 1992. She expressed concern about several areas of plaintiff's performance, including plaintiff's interpersonal and communication skills and an apparent lack of recent hands-on experience. She also believed plaintiff's performance would improve as he became more familiar with the facility in Green River. Duart Deposition Exhibit 37.

Lynn Larson, Jerry Miles and Dave Del Carlo, with input from the Human Resources department at FMC, decided to place plaintiff on probation after approximately one year of work. Plaintiff was given a warning that most likely he would be terminated, and he claims that Ms. Larson then recommended that he take time off to seek other employment after he was placed on probation. Plaintiff met with Ms. Larson and Mr. Miles three separate times while he was on probation, approximately once a month.

During that period, plaintiff claims he redoubled his efforts to please Ms. Larson, and notes that he was released from probation in December of 1992. The decision to release plaintiff from probation was made at the end of his 90 day probationary period by Ms. Larson, with the concurrence of Jerry Miles and Dave Del Carlo. Plaintiff asserts that when he was released from probation, the defendant, through Jerry Miles, assured him that he had no worry of termination and that he would be around a long time. First Amended Complaint, ¶ 14.

After plaintiff was released from probation, Ms. Larson continued to find that she had concerns about plaintiff's technical competency and ability to do the job. She questioned plaintiff's performance with respect to at least two projects. Plaintiff had been assigned a project in which heaters and blowers were to be installed in the Mono Powerhouse at FMC. Ms. Larson's opinion, as well as that of the electrical contractor FMC had engaged on the project, was that plaintiff's system was more complex and expensive than necessary. They also asserted plaintiff failed to order equipment on a timely basis to install the system. Affidavit of Don Irwin; Larson Deposition, Vol. II at 110; Duart Deposition Exhibit 48. Ms. Larson also expressed concern that plaintiff did not understand the requirements of another project called the "main shop power cable upgrade

1. 29 U.S.C. § 621 et seq.

2. Since his complaint was filed in this case, plaintiff John Duart died. Counsel for plaintiff advised the Court of his intention to substitute the personal representative of Mr. Duart's estate as plaintiff, as soon as one had been appointed pursuant to state law. Pursuant to *Smith v. Department of Human Services, State of Oklahoma,* 876 F.2d 832, 835 (10th Cir.1989), this Court believes that plaintiff's ADEA action sur-

vives the death of the plaintiff, but that claims for liquidated damages will not survive his death. Because the motions were pending and had been submitted to the Court prior to plaintiff's death, notwithstanding the absence of a formal substitution of the personal representative of plaintiff's estate as plaintiff, the term plaintiff throughout this Order will refer to plaintiff, John Duart. *See also Shkolnik v. Combustion Engineering, Inc.,* 856 F.Supp. 82, 88 n. 1 (D.Conn.1994).

project." Plaintiff had ordered 15,000 volt cable for the job, although Ms. Larson opined that it was not technically justified. After going on a walk-through of the project with plaintiff, Ms. Larson also believed that plaintiff did not understand the basic principles involved in the project. Larson Deposition, Vol. II at 110–122. She then contacted Dave Del Carlo for advice and to discuss her concerns about plaintiff's performance, as her immediate supervisor, Jerry Miles, was not available. Ms. Larson did not recommend any particular course of action. Affidavit of Dave Del Carlo, ¶ 7. After consulting with the Human Resources Department, the decision was made by Mr. Del Carlo to terminate plaintiff rather than place him on probation again. Affidavit of Dave Del Carlo, ¶¶ 5–8.

Plaintiff characterizes the events somewhat differently. He claims that in spite of his continued efforts to please Ms. Larson, she continued to take every opportunity to criticize his work and job performance, and that in February of 1993, she took action to terminate his employment. He also claims that Ms. Larson repeatedly reprimanded him and made derogatory remarks about his technical competency and age while employed at FMC. His amended complaint alleges that she was overheard by other employees to have made remarks about his age, including "[a]ll you old bastards ought to be retired and let us young people run the company the right way." First Amended Complaint, ¶ 11. Plaintiff requested a transfer to another department at FMC, which was denied. Plaintiff claims he was wrongfully terminated on February 5, 1993 under the pretense that plaintiff had made a mistake in ordering electrical cable to the detriment of FMC. First Amended Complaint, ¶ 16. Plaintiff urges that his termination was unlawful and was contrary to law and the policies and procedures established by FMC. He also claimed he was replaced by an engineer who was 26 years old who had only recently graduated from college.[3] After

plaintiff was terminated from employment with FMC, plaintiff filed complaints with the Wyoming Fair Employment Practices Commission and the Equal Employment Opportunity Commission, and filed suit after receiving a right-to-sue letter.

Defendant has generally denied plaintiff's allegations, and affirmatively alleges that his claims are barred by a failure to meet the administrative prerequisites under the ADEA, the statute of limitations, that plaintiff has failed to allege facts sufficient to allow recovery of punitive damages, that plaintiff's employment was terminable at will, that plaintiff's discharge from employment was for cause, that plaintiff breached the employment contract, that plaintiff failed to mitigate his damages and that the defendant acted in good faith.

During depositions and the course of preparing for trial in this case, defendant FMC acquired evidence that plaintiff had misrepresented his background and experience as an electrical engineer in the resume he had submitted when being considered for the position with FMC and in the Application for Employment filled out on the first day of his employment. FMC, in its motion for summary judgment, also asserts that plaintiff misled a key decision-maker in the interview process in order to obtain employment.

Specifically, plaintiff's résumé stated that his professional experience included a position as Senior Electrical Engineer with Placid Oil and Refining Co. from February, 1989 to present. Prior to that time, the résumé states that he was self-employed as a Consulting Engineer from January 1987 to February 1989. He represented that as a Consulting Engineer during that period he designed, redesigned and upgraded existing equipment, and worked as a troubleshooter. During his deposition, plaintiff testified that while he was a Consulting Engineer in 1987–1989 he did no design, redesign, upgrading, or troubleshooting work at all. Plaintiff's deposition testimony indicates that he en-

---

**3.** Defendant disputes this contention, and notes that the man who replaced plaintiff following his termination from employment by FMC was indeed 26 years of age, had been transferred from FMC's plant engineering department into the maintenance department and was not a new

hire. The individual who assumed some of plaintiff's duties and responsibilities had the same degree (BSEE) as plaintiff and had been employed by FMC at its Green River operation since May 29, 1989.

gaged in consulting work for a total of about five weeks during that two year period and that during most of that time, he was touring the United States with his family.

The application submitted indicated that plaintiff had been employed with Placid Refining from February 1989 to September 1991 and that his supervisor was Mickey Dugas. Plaintiff also told the interviewers at FMC, when he was seeking employment with defendant, that he would be leaving Placid because he did not want to do the type of work that would likely be required of him in the future. The Affidavit of Thomas Bourgeois indicates that plaintiff commenced employment with Placid in November of 1989 and was terminated from his employment at Placid in July of 1991.[4] Mr. Bourgeois' Affidavit also indicates that plaintiff's position was Electrical Engineer, that he never held the position of Senior Electrical Engineer, that Mr. Bourgeois was the direct supervisor of plaintiff during his entire tenure at Placid, that Mickey Dugas was never plaintiff's supervisor, and that plaintiff never had any reporting relationship to Mr. Dugas during his tenure at Placid.

The Affidavit of Dave Del Carlo, Site Services Manager for FMC in Green River, Wyoming states, that he has ultimate authority for all hiring and firing decisions in the Maintenance Department where plaintiff worked at FMC. Mr. Del Carlo indicates that he was not aware that plaintiff had "falsified his résumé or employment application" prior to reaching the decision to terminate plaintiff's employment. Del Carlo Affidavit ¶ 9. In Mr. Del Carlo's opinion, the misrepresentations concerning plaintiff's prior employment were important, and if he had known plaintiff had made them prior to hiring him, he never would have approved the decision to hire him. He also stated:

> If it had been brought to my attention during his employment with FMC Wyoming Corporation that Mr. Duart had

made the foregoing misrepresentations on his résumé and application, I would have decided to terminate him for that reason as well. In fact, in my mind, these acknowledged misrepresentations go a long way toward explaining the serious performance and competence problems that Mr. Duart exhibited during his brief employment with us.

Del Carlo Affidavit ¶ 12.

In his responsive pleading, plaintiff denies that his résumé was materially inaccurate or would have justified termination at any stage of his employment. In his supporting affidavit, plaintiff states that "the résumé and application which I had submitted to FMC were in all material aspects appropriate and correct." Duart Affidavit ¶ 9.

## Standard of Review—Motions to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

The Tenth Circuit, in *Pitts v. Turner and Boisseau Chartered,* 850 F.2d 650, 652 (10th Cir.1988), *cert. denied* in 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989) (quoting *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987)), set forth the standard of review for dismissals pursuant to Fed.R.Civ.P. 12(b)(6):

> In reviewing a dismissal for failure to state a claim, we must accept as true the plaintiff's well-pleaded factual allegations and all reasonable inferences must be indulged in favor of the plaintiff. Dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' (Citations omitted.)

In considering a motion to dismiss, a court must take the allegations of the complaint at face value and must construe them most favorably to the plaintiff. The allegations in the plaintiff's complaint are presumed true. *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). A court should not grant a motion to dismiss unless it appears

---

**4.** The record is not entirely clear when plaintiff applied with FMC. Ms. Larson spearheaded the selection process, reviewing resumes and conducting preliminary telephone interviews with a number of candidates. After speaking with Ms. Larson on the telephone following her review of his résumé, plaintiff was invited and came to

Green River for an interview in September of 1991. Plaintiff's Affidavit, at ¶ 8, states that in the late summer of 1991, he was placed in contact with FMC in Green River, Wyoming with respect to a job opening for a Senior Electrical Engineer.

**1454**

beyond doubt that the plaintiff could prove no set of facts supporting the claim which would entitle plaintiff to relief. *Huxall v. First State Bank,* 842 F.2d 249, 250–51 (10th Cir.1988). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d at 1565.

However, Rule 12(b) further expressly provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In this case, defendant has moved, pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss certain of the plaintiff's claims for failure to state claims upon which relief can be granted. All parties have had, and have utilized, reasonable opportunity to present all materials made pertinent to such motions by Rule 56, and matters outside the pleadings have been presented to and not excluded by the Court. Therefore, the motion to dismiss shall be treated as a motion for summary judgment by the Court.

### Standard of Review Motions for Summary Judgment

■ Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the rec-

ord demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether these burdens have been met, the court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.,* 648 F.2d 1272 (10th Cir.1981).

■ Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health,* 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

### Discussion

*1. Whether plaintiff's résumé and employment application misrepresentations bar recovery*

■ In this case, defendant acquired evidence of employee misconduct after plaintiff was terminated. This after-acquired evidence is described in the preceding portions of this Order. In the Tenth Circuit, for after-acquired evidence of employee misconduct to bar relief in a termination case, there must be proof that:

> (1) the employer was unaware of the misconduct when the employee was discharged; (2) the misconduct would have justified discharge; and (3) the employer would indeed have discharged the employee, had the employer known of the misconduct.

*O'Driscoll v. Hercules Inc.,* 12 F.3d 176, 179 (10th Cir.1994), citing *Summers v. State Farm Mutual Automobile Ins. Co.,* 864 F.2d 700, 708 (10th Cir.1988) and *Johnson v. Honeywell Info. Sys., Inc.,* 955 F.2d 409, 414 (6th Cir.1992).

■ Plaintiff has urged this Court to find that the misrepresentations were not material, and has also argued that the Tenth Circuit is simply wrong in its understanding of the applicable law. The Court rejects both

of plaintiff's arguments. The district court is bound to follow Tenth Circuit precedent, regardless of its own views. *United States v. Spedalieri,* 910 F.2d 707, 709 and 709, n. 2 (10th Cir.1990). Furthermore, under *O'Driscoll v. Hercules Inc.,* there is "no threshold requirement of serious and pervasive misconduct." *O'Driscoll v. Hercules Inc.,* 12 F.3d at 179.

In *O'Driscoll v. Hercules Inc.,* the plaintiff was barred from any recovery in her termination case because she had made multiple representations to her employer. Plaintiff had misrepresented her age so she appeared to be five years younger on her employment application, she falsely represented she had never applied for employment with Hercules, and she failed to disclose a previous employer. On her pre-employment forms, she misrepresented her age, her date of graduation from high school, the ages of her children, and falsely represented she had completed two quarters of study at Salt Lake Technical College. On her application for health insurance, she misrepresented the age of her son, who would otherwise have been ineligible for medical coverage under the policy. On her application for a security clearance, plaintiff again misrepresented her own age. *Id.* at 177–178. The Tenth Circuit stated that plaintiff's "repeated misrepresentations demonstrated a pattern of dishonesty and disregard for the truth." *Id.* at 180.

In that case, the plaintiff had also argued that the misrepresentations were not material and that Hercules would not have been justified in terminating her for those misrepresentations. *Id.* at 180. The circuit court stated that it need not address whether the plaintiff's résumé fraud required a showing of materiality, because her résumé misrepresentations were not the only misrepresentations relied upon by Hercules in asserting that plaintiff would have been fired. The Court, reviewing the seriousness and number of misrepresentations indicating a "general disregard for the truth," concluded that plaintiff's misconduct would have justified her termination.

In this case, it is telling that plaintiff has failed to meet the burden of demonstrating the existence of a genuine issue for trial by designating specific controverted facts. He does not dispute that his résumé and employment application included misrepresentations. He argues that FMC had a duty to make inquiries of past employers to verify the accuracy of his résumé and he denies his résumé was materially inaccurate or would have justified termination at any stage of his employment. Plaintiff's affidavit states that he:

worked as a consulting engineer for some time before working for Placid Oil and Refining Company as a Senior Engineer. While working as a consulting engineer I did a few projects for companies which retained my services and at some point actively obtained employment with Placid Oil Company. At Placid Oil and Refining Company in Baton Rouge, Louisiana I worked with and under, Mickey Dugas who was the project manager and as such supervised work that I accomplished under his direction.

7. While employed at Placid Oil I performed a number of duties relating to my responsibilities as a Senior Electrical Engineer. Unfortunately, the job that I was assigned eventually ended and it became obvious that the work remaining would not be consistent with my training. At this time, I prepared a résumé and began an active search for other employment through the use of an employment agency.

8. In the late summer of 1991, I was placed in contact with FMC in Green River, Wyoming with respect to a job opening for a Senior Electrical Engineer. I provided FMC with my résumé which indicated that I had been employed "to the present." I was contacted by a Ms. Lynn Larsen [sic] with respect to my résumé and during the course of a telephone conversation indicated that the time of our conversation, I was not employed although I had been employed at Placid Oil. Subsequently, I was brought to Green River, Wyoming for an interview and enjoyed my interviews with all of the individuals, save Lynn Larsen. Ms. Lynn Larsen appeared to be antagonistic at times through the interview process. Eventually, I was offered a position as an Electrical Engineer with FMC

and began my employment of November of 1991. As I was offered this employment, I moved my family from Baton Rouge to Green River, Wyoming although it was a sacrifice for them to be uprooted.

The affidavit has internal inconsistencies: for example, plaintiff states he was a senior electrical engineer at Placid Oil in paragraph 7, and that he was a senior engineer in paragraph 6. Plaintiff states in his deposition testimony that he began his employment at FMC October 7, 1991; his affidavit indicates he began in November of 1991. He explains that he worked "with and under" Mickey Dugas at Placid Oil and that the work at Placid would not be consistent with his previous training.

Unlike the representations that were discovered after termination in *O'Driscoll*, the misrepresentations and misimpressions created by the plaintiff's conduct here related directly to his qualifications and experience that were necessary for satisfactory job performance. It is not surprising that defendant relied upon the information furnished by plaintiff. There is no support for imposing a duty to conduct an investigation of the underlying facts disclosed in the résumé and employment application upon the employer, particularly when the employee is seeking a professional position entailing substantial responsibility. A background investigation may represent a wise course, but there is no such obligation generated by the employment process.

Plaintiff has offered no evidence, other than his own self-serving affidavit to support his contentions. Plaintiff had a fair opportunity for discovery and to file opposing affidavits and materials in supporting of his opposition to defendant's motion for summary judgment and he did not file any supporting affidavits other than his own. The Court concludes that plaintiff has failed to meet his burden of demonstrating the existence of a genuine issue for trial by designating specific controverted facts. *See Jackson v. Integra Inc.*, 1994 WL 379305, *2 (10th Cir.1994) (unpublished disposition). Plaintiff's self-serving affidavit does not explain the misrepresentations in either the application for employment or résumé nor does it demonstrate

that the relief requested by defendant, relying upon *O'Driscoll* and the after-acquired evidence of employee misconduct, should not be granted as a matter of law. Summary judgment should be granted in favor of defendant.

### 2. ADEA

■ In the Tenth Circuit, the three-stage analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), is employed to "prove discrimination when no direct evidence of age discrimination exists." *Cone v. Longmont United Hosp. Assn.*, 14 F.3d 526, 529 (10th Cir.1994), citing *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988).

> At the first stage, the plaintiff must prove a prima facie case of discrimination. She must show that (1) she is "within the protected age group"; (2) she "was doing satisfactory work"; (3) she "was discharged"; and (4) her position was filled by a younger person. *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991) (quoting *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988)).
>
> If the plaintiff satisfies the prima facie requirements under the ADEA, then the case enters the next stage. In this second stage, the burden of production moves to the defendant. The defendant has to present a legitimate nondiscriminatory reason for its action. If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of persuasion moves back to the plaintiff. In this third stage of the discrimination analysis, the plaintiff must show that age was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext.... Failure to come forward with evidence of pretext will entitle the defendant to judgment....

*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d at 529 (some citations omitted).

■ In this case, the Court believes that plaintiff has established a prima facie case of discrimination. Some courts have noted that the burden of proof in establishing a prima facie case of discrimination under the ADEA is "de minimis." *Getschmann v. James River Paper Co., Inc.*, 822 F.Supp. 75, 78 (D.Conn.1993), *aff'd* 7 F.3d 221 (2d Cir.1993); *see also Shkolnik v. Combustion Engineering, Inc.*, 856 F.Supp. 82, 86 (D.Conn.1994). Plaintiff has alleged in his First Amended Complaint that he is within the protected age group, that he was doing satisfactory work and was qualified to perform the duties of his employment, that he was discharged from employment, and that his position at FMC was filled by a younger person.

■ However, defendant rebutted the inference of age discrimination by proving that plaintiff's performance was unsatisfactory. Defendant has supported this contention with a number of documents, including performance review documents and reports of probationary meetings indicating that plaintiff's technical, interpersonal and communication skills were lacking and needed improvement. *See* Duart Deposition Exhibits 37, 38, 39, 40, 41, 42, 43, 45, 48, and 49. Supporting Affidavits were also offered by defendant in support of its position. *See e.g.*, Affidavits of Dave Del Carlo, Don Irwin, Lynn Larson, Gene Smith.

A review of all the materials presented in support of defendant's motion for summary judgment rebuts the inference of age discrimination by proving that plaintiff's performance was unsatisfactory and by articulating a legitimate nondiscriminatory reason for its actions. The materials demonstrate that plaintiff's performance was not sufficient to satisfy the requirements of his supervisors at FMC and that he had had many opportunities to improve his performance. Plaintiff was terminated from employment at FMC only after it was apparent that plaintiff's performance was not satisfactory and not as expected of a Grade 20 engineer and that he was not qualified to perform the job.

■ When the defendant has articulated the legitimate, nondiscriminatory reason for its action, then the burden of persuasion shifts back to the plaintiff. In this third stage, plaintiff must show that age was a determinative factor in defendant's employment decision, which has not been offered in this case, or show that the defendant's explanation for its action was merely pretext. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d at 529. Failure to come forward with any evidence of pretext will entitle the defendant to judgment. *Id.*

■ Plaintiff has not met this burden. He may prove pretextual discrimination by showing either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d at 530, quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) and citing *MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1121–22 (10th Cir.1991).

■ The evidence offered by plaintiff does not create a genuine issue that raises doubts about FMC's motivation in terminating plaintiff's employment. He has argued that ageist comments made by Lynn Larson demonstrate discrimination and that age was the real reason for his termination. In *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d at 530–531, the circuit court determined that stray ageist comments were insufficient to create a jury issue in an ADEA case.

> "Age-related comments referring directly to the worker may support an inference of age discrimination.... However, ... isolated [or] ambiguous comments ' "are too abstract ... to support a finding of age discrimination." ' ... Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.... [Plaintiff] must demonstrate a nexus exists between these allegedly discriminatory statements and the [defendant]'s decision to terminate her....

*Id.* (internal citations and parentheticals omitted).

The only evidence plaintiff offers to satisfy the burden of proving pretext are the stray remarks and comments by Lynn Larson, in-

cluding "[a]ll you old bastards ought to be retired and let us young people run the company the right way." Plaintiff has not shown any nexus between the comment(s) made by Ms. Larson and the decision to terminate plaintiff from employment at FMC. In the absence of such a nexus, plaintiff has failed to carry the burden of proving that the defendant was motivated by illegal age bias. The comments alone will not satisfy the burden of proving pretextual discrimination. "'Since defendant's evidence of a legitimate business reason is so overwhelming, these remarks are "too slender a reed to carry the weight of the charge in this case against the evidence which refutes it."'" *Getschmann v. James River Paper Co., Inc.,* 822 F.Supp. at 78, quoting *Graham v. Renbrook School,* 692 F.Supp. 102, 108 (D.Conn. 1988) quoting *Vaughan v. Burroughs Corp.,* 17 F.E.P. cas. (BNA) 865, 868, 1978 WL 13936 (E.D.Mich.1978).

Here, the decision to terminate plaintiff from employment at FMC was not that of Ms. Larson alone. She was required to consult with her supervisor, Jerry Miles, and his supervisor, Dave Del Carlo, made the ultimate decision to terminate plaintiff after consulting with FMC's Human Resources department. As in *Getschmann,* the remarks by Ms. Larson, tasteless and ill-advised as they were in the workplace, are "too slender a reed" to carry the weight of the plaintiff's charges in this case. The evidence that FMC was motivated by plaintiff's age or that age was the real reason for defendant's decision to terminate plaintiff's employment will not preclude the granting of summary judgment on this claim for relief in favor of defendant FMC.

*3. Breach of express contract*

The parties have no disagreement that they entered into an employment relationship in October of 1991. However, they do dispute the nature of that employment relationship. Plaintiff claims to have been given employment of an unspecified and indefinite duration, but that he could only be terminated in accordance with defendant's personnel policies providing for progressive discipline, appropriate notice with respect to adverse action, and that the defendant's policies also prohibited harassment of employees. Plaintiff relies on certain of defendant's documents and workbooks to argue that the at-will employment relationship has been altered so as to establish an express contract providing for progressive discipline.

Documents relied upon by plaintiff to create an explicit contract of employment include the Performance Management Policy (Duart Deposition Exhibit 17), a document entitled "Valuing Diversity" (Duart Deposition Exhibit 18), FMC's Code of Ethics and Business Conduct Guidelines (Duart Deposition Exhibit 20), an employee workbook entitled "Focus of Performance Management and Process" (Duart Deposition Exhibit 23), and an FMC Wyoming Corporation newsletter entitled "Trona News Today" as a reaffirmation of FMC's policy and practice of providing "fair treatment and equal opportunity" to all employees (Duart Deposition Exhibit 20). Plaintiff contends that defendant breached its duties with respect to this claimed explicit contract and that such breach was the proximate cause of plaintiff's damages.

Defendant contends that plaintiff was at all times an at-will employee who could be terminated for any reason at any time with or without notice. Defendant further contends that if plaintiff is determined not to be an at-will employee who could only be terminated for cause, just cause existed for termination. Specifically, defendant argues that plaintiff's lack of technical, interpersonal and communication skills would constitute just cause for terminating plaintiff's employment. Defendant also contends that in order for the company's handbook or policy to overcome the presumption of at-will employment, language sufficient to create a binding contract, such as a list of causes for termination, specific progressive discipline steps, or assurances of continued employment are required, relying upon *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 218 (Wyo. 1994).

In Wyoming, the courts have followed a common law rule of employment at-will. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 217 (Wyo.1994); *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985). An at-will employment

relationship which is of indefinite duration may be terminated by either party, at any time, for any reason or no reason at all, without breaching the contract of employment. *Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 703 (Wyo.1994); *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 282 (Wyo.1985).

The Wyoming Supreme Court has recognized, however, that the distribution of employee handbooks or manuals may supply terms for an implied in fact contract of employment. *Lincoln v. Wackenhut Corp.*, 867 P.2d at 703. "[A] systematic discipline procedure or other language in an employee handbook implying termination may be for cause only may defeat the rebuttable presumption that employment is at will." *Id.*, citing *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1257 (Wyo. 1993). Also, listing certain conduct for which an employee may be discharged implies that cause is required before discharge, thus creating an implied employment contract. *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1063 (Wyo.1986). This is not to say that the existence of a handbook will make employment other than at-will in all instances; rather, each case must be considered on its own merits. *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d at 706; *see also McDonald v. Mobil Coal Producing, Inc. [McDonald II]*, 820 P.2d 986 (Wyo.1991).

In determining whether or not an employer is contractually bound to its handbook provisions, the Wyoming Supreme Court has paid particular attention to whether or not the handbook was distributed to employees and whether or not the handbook reflects an intention to take the place of a labor agreement, securing for the employer an "orderly, cooperative and loyal work force." *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d at 706–07 [quoting *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 892 (1980) ]. The Wyoming Supreme Court has held that in determining whether an employer intended to modify at-will employment with its employment handbook, one must evaluate whether the employer's objective manifestations of assent to contract created reasonable reliance by the employee. *McDonald II*, 820

P.2d at 990. Factors in this analysis include any disclaimers in the handbook, the remainder of the handbook provisions in addition to the disclaimers, and the employer's course of dealing with the employee. *Id.*

The Wyoming Supreme Court, in *Lincoln v. Wackenhut Corp.*, 867 P.2d at 703, discussed the sufficiency of disclaimers in relevant documents, such as employment applications and handbooks, that are intended to place an employee on notice that "general statements or conduct do not promise employment security and are not to be relied upon by the employee." *Id.* Three factors have been identified by the Wyoming Court, in *Lincoln v. Wackenhut Corp.*, *Sanchez v. Life Care Centers* and *McDonald II*, to determine whether a disclaimer is sufficient to preserve an at-will employment relationship:

> Three factors were used to test both the conspicuous presence of the language and the unambiguous meaning of the language. First, the prominence of the text of the disclaimer was examined. The court concluded the text of the disclaimer was not set off such as by the use of a border or large, contrasting print and it was not capitalized. *Id.* Second, the placement of the disclaimer relative to the other text in the handbook was considered. The court found the disclaimer was contained within a welcoming section of the employee handbook rather than in a separate provision where a reasonable person ought to have noticed it. *Id.* Third, the language of the disclaimer was construed to determine whether it was unambiguous. The court decided the language was unclear about the disclaimer's effect on the employment relationship. *Id.* As a result, under the objective theory of contract formation, the meaning and effect of the implied in fact contract of employment that may have been formed between the employer and the employee created a *genuine issue of material fact* which precluded summary judgment.
>
> * * * [T]he three factors of prominence, placement and language outlined in *McDonald II* were used to test whether the disclaimer was conspicuous. . . .

Applying the teachings of *McDonald II* and *Sanchez,* the summary judgment in favor of Wackenhut on the breach of contract claim will be affirmed if we determine, as a matter of law, that the language of the Wackenhut handbook provision disclaiming the formation of any implied in fact contract of employment is sufficiently conspicuous and unambiguous to preserve an employment at will relationship.

Lincoln does not contend that she was hired as other than an employee at will. Instead, she argues that the discipline procedure of the Wackenhut handbook constituted a term of an implied in fact contract of employment which modified her at will status to that of an employee subject to termination for cause only and with certain procedural rights. However, if the Wackenhut handbook disclaimer is conspicuous and unambiguous as a matter of law, then it would constitute an effective notice of Lincoln that Wackenhut did not promise to abide by the discipline procedure in terminating at will employees and any reliance would have been unreasonable.

*Lincoln v. Wackenhut,* 867 P.2d at 703–704. *See also Loghry v. Unicover Corp.,* 878 P.2d 510 (Wyo.1994) (disclaimer of contract in a personnel handbook was conspicuous, employee was an at-will employee who could be discharged with or without cause and without adhering to an internal disciplinary process; employee, in addition to receiving handbook containing disclaimer, was required to sign separate disclaimer. Handbook stated it was provided to employees as a matter of information only; was not intended to create or be construed to constitute a contract between the company and its employees. Print in the disclaimer on the acknowledgement form was not in bold face, but was large, clear and prominent by its size in juxtaposition to the print in the personnel handbook; other provisions in handbook in the nature of disclaimers also clear and intelligible).

None of the materials now before the Court provide an indication that any of the documents offered by plaintiff constitute an objective manifestation of assent to contract. It is evident that defendant FMC never intended that these documents create an employment contract which would modify or alter an at-will employment relationship. The employment application signed by plaintiff included the following language on the last page:

IMPORTANT
PLEASE READ CAREFULLY

**Please read the following statements carefully, and acknowledge with your signature below.**

**I understand and agree that:**

1. Any material misstatement or deliberate omission of a relevant fact by me in this application, a resume, and/or attachments will be sufficient cause for terminating consideration of any application or my subsequent employment.

\* \* \* \* \* \*

5. If I am employed by FMC, my employment and compensation may be terminated at any time at the option of either FMC or myself, with or without cause, and with or without notice.

6. Policy manuals, employee handbooks, and statements of employee benefits are informational only and do not create an employment contract or alter my status as an at-will employee, and no employee or representative of FMC, other than an officer of FMC, has authority to enter into any agreement which alters my status as an at-will employee.

\* \* \* \* \* \*

Duart Deposition Exhibit 25. This page was signed and dated by plaintiff.

■■■ The Performance Management Policy (Duart Deposition Exhibit 17) discusses probation, and provides in part:

*PURPOSE*

Probation is a process for communicating a serious misalignment between the performance of the individual and the requirements of the job.

Probation is NOT a performance designation, rather it is a condition of employment. Probation also is NOT a pre-condition for termination; circumstances may warrant

terminating the employee without preconditioning or informing the employee through use of a probation condition. Probation is used to mutually focus efforts to manage and improve performance. It assume[ ] performance improvement is possible and continued employment is achieveable [sic].

■ Duart Deposition Exhibit 18, a memo to all FMC employees from Robert N. Burt, VALUING DIVERSITY, expresses a philosophy that diversity is desirable to FMC. The memo announces the establishment of a Diversity Leadership Council. This memorandum provides in part:

Our commitment to valuing diversity rests on three basic assumptions which are simple in concept but difficult to practice.

- Each employee deserves to be treated with respect and dignity, and each of our employee's [sic] brings their uniqueness to the workplace.
- By openly exchanging and blending different ideas we can bring better and more creative solutions to business issues.
- By leveraging different approaches, thinking styles and cultural values we can built teamwork while maximizing the potential of each employee to contribute to FMC's continued success.

This document includes no representations other than those which define the aspirational goals that the company desires to strive for in the future.

■ Duart Deposition Exhibit 20, the Code of Ethics and Business Conduct Guidelines, outlines "ethical principles that should guide all FMC employees in their daily work." The Business Conduct Guidelines are "FMC policies on such matters as prohibited payments, insider trading, conflicts of interest, antitrust laws, anti-boycott regulations, export controls, U.S. government procurement, significant environmental laws, government investigations and records management." There is no language in this document purporting to alter the at-will employment relationship of employees and FMC; this document does not set out any provisions in which FMC promised to abide by a specific discipline procedure in terminating at-will employees.

■ Duart Deposition Exhibit 23 is an employee workbook entitled "Focus on Performance Management Process." Below the copyright date, on the inside front cover, the following statement is written:

Nothing contained in this Workbook or in other descriptive material about the FMC Performance Management Process (PMP) is intended to, nor should be construed as, creating a contractual obligation on FMC or as guaranteeing employment for any specific period of time. FMC reserves the right to modify or eliminate the Performance Management Process at any time. Groups, Divisions or specific locations may seek approval from the Vice President of Human Resources for variations from the process outlined herein due to business circumstances.

The introduction to this document explains that it is intended to "communicate what is expected of you; provide information to help you get your work done; help you develop your skills, knowledge, and ability; and relate your compensation to your job performance" and enable the employee to work up his or her own performance plan for the year. This workbook does not list causes for termination, specify progressive discipline, contain assurances of continued employment or guarantee that termination will only be for just cause.

■ Duart Deposition Exhibit 19, the FMC newsletter, was dated December 6, 1993, long after plaintiff had been terminated from his employment at FMC. Because plaintiff never saw this document while an employee at FMC, he could not have reasonably relied on it. Furthermore, this newsletter does not list causes for termination, specify progressive discipline, contain assurances of continued employment or guarantee that termination will only be for just cause.

The Court has reviewed carefully the documents offered by plaintiff in support of his argument that he was not an at-will employee and that he had an express contract of employment that could not be terminated without cause and pursuant to the company's

disciplinary and termination policies. After this review, the Court concludes as a matter of law that plaintiff was an at-will employee of FMC whose employment could be terminated at any time with or without cause and with or without notice. Defendant is entitled to summary judgment in its favor on plaintiff's breach of contract claim.

### 4. Promissory Estoppel

The Wyoming Supreme Court has discussed promissory estoppel and adopted the Restatement (Second) of Contracts § 90(1) (1981) in response to a claim for wrongful discharge of an employee. *Ware v. Converse County School District No. 2*, 789 P.2d 872, 875 (Wyo.1990). The Wyoming Court, relying upon this section of the Restatement, held that:

> an employee's expectation of employment could be altered by an employer's representation if: (1) the employer should have reasonably expected the employee to consider the representation as a commitment from the employer; (2) the employee reasonably relied upon the representation to his detriment; and (3) injustice could be avoided only by enforcement of the representation.

*Id.*

To invoke the doctrine of promissory estoppel, plaintiff will be required to prove three elements: (1) a clear and definite agreement; (2) proof that the plaintiff, as the party urging the doctrine, acted to his detriment in reasonable reliance on the agreement; and (3) a finding that the equities support enforcement of the agreement. *Davis v. Davis*, 855 P.2d 342, 347 (Wyo.1993). *See also Michie v. Bd. of Trustees of Carbon County School District No. 1*, 847 P.2d 1006 (Wyo.1993); *Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239 (Wyo.1992). The purpose of estoppel is " 'to prevent an injury arising from actions or declarations which have been acted on in good faith and which would be inequitable to permit a party to retract.' " *Id.* at 347–348, quoting *Jankovsky v. Halladay Motors*, 482 P.2d 129, 132 (Wyo. 1971).

Plaintiff has argued that the employee handbook, the policies of FMC, the memoranda and other notices provided to employees provided representations to employees addressing the terms and conditions of employment. Plaintiff argues these policies and representations contain information concerning the employee's termination and advancement with the company and that those representations were promised to employees in order to induce and improve behavior. Plaintiff contends the company:

> induced Mr. Duart and his family to move from Baton Rouge to Green River, Wyoming and establish residency and begin his employment with FMC, with such actions, the company had further represented the type of employment that would be given to the Plaintiff. These representations establish promises made to Mr. Duart that were breached by the company to the employee's detriment and which are actionable.

Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment or Partial Summary Judgment at p. 16.

The Court has already reviewed the documents plaintiff claims induced him to move to Wyoming and accept employment with FMC Wyoming Corporation. There are no promises to plaintiff of anything other than at-will employment. Furthermore, when plaintiff accepted the job offer, he was not employed and did not have any other job offers. Defendant paid the expenses of his move to Wyoming. It does not appear that any representations were made to plaintiff which were relied upon by him to his detriment. The Court finds that defendant is entitled to summary judgment on plaintiff claim for relief based on promissory estoppel.

Furthermore, in the absence of a showing that plaintiff did in fact rely upon the proffered documents, or some other representation made to him by defendant or defendant's representatives, plaintiff is unable to demonstrate to the satisfaction of this Court that any clear and definite agreement exists upon which he reasonably relied to his detriment. Without proof of such an agreement, as well as reasonable reliance on that agreement, the doctrine of promissory estoppel has no application. Defendant would be entitled to summary judgment on that basis as well.

*5. Breach of the implied covenant of good faith and fair dealing*

Summary judgment should be granted in favor of defendant on the plaintiff's cause of action asserting a breach of the implied covenant of good faith and fair dealing. The Wyoming Supreme Court adopted the implied covenant of good faith and fair dealing in *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d at 220–221.

> The Restatement (Second) of Contracts § 205 at 99 (1981) recognizes an implied duty under every contract:
>
> § 205 Duty of Good Faith and Fair Dealing
>
> > Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.
>
> Good faith means "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community **standards of decency, fairness or reasonableness.**" *Id.* at 100, cmt. a (emphasis added). See *Garner v. Hickman,* 709 P.2d 407, 411 (Wyo.1985) (referring to definition of "good faith" under Uniform Commercial Code as honesty in fact in the conduct of the transaction concerned).

*Wilder v. Cody Country Chamber of Commerce,* 868 P.2d at 220. The Wyoming Court continued in that opinion, discussing applicability of the implied covenant of good faith and fair dealing to contracts of employment:

> The Supreme Court of Arizona correctly summarized that the implied covenant "does not create a duty for the employer to terminate the employee only for good cause." ... For example, we do not consider it appropriate to read into the implied covenant language mandating that every termination must be for a "fair and honest reason." ... However, we conclude that the implied covenant, with appropriate limitations, serves to balance the inherently unequal relationship between an employer and an employee....
>
> We hold that recovery of damages is permitted for tortious conduct which arises out of a contractual relationship of employ-

ment in breach of the implied covenant of good faith and fair dealing....

> A tort, however, requires the presence of a duty created by law, not merely a duty created by contract; and, although a duty of good faith and fair dealing is created by law in all cases, it is only in **rare and exceptional** cases that the duty is of such a nature as to give rise to tort liability. The kind of breach of duty that brings into play the bad faith tort arises only when there are **special relationships** between the tort-victim and the tort-feasor * * *.
>
> ... The special relationship necessary to permit recovery is not established merely by the employer-employee relationship. A showing is required that a special relationship of trust and reliance exists between the particular employee seeking recovery and the employer.... Trust and reliance may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service....

*Wilder v. Cody Country Chamber of Commerce,* 868 P.2d at 221–222 (citations omitted).

In the instant case, plaintiff urges that the special relationship exists by virtue of the circumstances presented in the case. Plaintiff suggests that his acceptance of the offer of employment made by FMC and moving his family to Green River, Wyoming is sufficient to create the special relationship that *Wilder* requires to support a tort claim for breach of the covenant of good faith and fair dealing.

The defendant disputes plaintiff's contention and argues that the relationship between plaintiff and the defendant was insufficient to permit the "special relationship" described in *Wilder* to develop. This Court agrees with defendant. In this case, plaintiff was not a long-term employee of FMC. There was no separate consideration given upon which plaintiff relied, and no evidence suggests termination occurred as a means of avoiding payment of previously earned benefits.

 The Court finds there are no genuine issues of material fact on this claim to be presented to a jury for resolution. In this case, the plaintiff was unemployed at the time he accepted employment with FMC; FMC paid the expenses related to moving plaintiff and his family to Wyoming. When plaintiff was terminated from employment February 5, 1993, he was compensated through the end of March 1993, as well as for accrued unpaid vacation. The tort remedy for a breach of the implied covenant of good faith and fair dealing addresses especially egregious, extremely outrageous or venal conduct and provides a remedy for violating community standards of decency, fairness or reasonableness. The materials that have been presented to the Court do not paint such a picture and do not provide a sufficient basis for finding that a special relationship within the contours of *Wilder* exists.

*6. Negligent and/or Intentional Infliction of Emotional Distress*

a. Intentional Infliction of Emotional Distress

 The defendant urges this court to dismiss plaintiff's claim for intentional infliction of emotional distress. This tort has been discussed by this court recently. In *Gustafson v. Bridger Coal Co.*, 834 F.Supp. 352 (D.Wyo.1993), the court cited and quoted from *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1065 (Wyo.1986), in which the Wyoming Supreme Court recognized the tort of intentional infliction of emotional distress. "The tort occurs when '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another....'" *Gustafson v. Bridger Coal Co.*, 834 F.Supp. at 355 (quoting from *Leithead*, which cites Restatement (Second) of Torts § 46 (1965)).

Additionally:

In order to maintain an action for intentional infliction of emotional distress, there must be outrageous conduct "which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community." [*Leithead v. American Colloid Co.*, 721 P.2d] at 1066. For the plaintiff to recover for in-

tentional infliction of emotional distress, the distress inflicted must be so severe that no reasonable person could be expected to endure. *Id.* at 1066, 1067.

*Ball v. City of Cheyenne*, 845 F.Supp. 803, 814 (D.Wyo.1993).

In the instant case, this Court is not persuaded that plaintiff can prove sufficient facts entitling him to relief on the claim of intentional infliction of emotional distress. In his First Amended Complaint, at page 8, ¶ 33, he alleges that:

The Defendant's action of terminating the Plaintiff has negligently inflicted severe emotional distress on the Plaintiff such that the conduct of the Defendant has caused severe mental, physical and emotional injuries to the Plaintiff. Not only has he suffered loss of reputation and employment, but after scores of attempts to find a means to support himself, is still without a job.

Applying the applicable standard of review, this Court concludes that defendant's motion for summary judgment as to plaintiff's claim for intentional infliction of emotional distress claim for relief must be granted.

b. Negligent Infliction of Emotional Distress Claim

 Summary judgment in favor of defendant should be granted on this claim. A plaintiff may recover damages for negligent infliction of emotional distress only if the plaintiff observes the infliction of serious bodily harm or death, or observed the serious bodily harm or death shortly after its occurrence but without material change in the condition and location of the victim. *Gates v. Richardson*, 719 P.2d 193, 198 (Wyo. 1986); *Contreras v. Carbon County School Dist. No. 1*, 843 P.2d 589, 594–94 (Wyo.1992). Plaintiff has not alleged any facts that would permit a recovery for negligent infliction of emotional distress in the instant case. Notwithstanding plaintiff's attempted characterization of himself as a victim of the defendant's claimed wrongdoing, it is clear that current Wyoming law bars his claim for negligent infliction of emotional distress in the circumstances of this case.

### Conclusion

The Court concludes that there are no genuine issues as to any material fact and that defendant FMC Wyoming Corporation is entitled to judgment as a matter of law. In accordance with the foregoing, it is hereby

**ORDERED** that defendant's Motion for Summary Judgment or for Partial Summary Judgment, seeking judgment in its favor on plaintiff's claims for breach of contract/promissory estoppel, age discrimination ("ADEA"), breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress and negligent infliction of emotional distress, shall be, and is, **GRANTED.** It is further

**ORDERED** that Judgment be entered in favor of defendant FMC Wyoming Corporation on all counts set forth in plaintiff's First Amended Complaint.